GEORGE CAPLE, *as Guardian, etc.*, v. LUCY A.
DREW *et al.*

No. 13,697.    (78 Pac. 427.)

SYLLABUS BY THE COURT.

1. PARTIES—*Allegation of Authority.* An averment in a peti-
tion that a guardian was appointed is put in issue by a verified
answer denying generally the averments of the petition, where
the affiant states that the denials, or contents of the answer, are
true.

2. ——— *Case Distinguished.* The case of *Kimble v. Bunny,* 61
Kan. 665, 60 Pac. 746, distinguished.

3. PRACTICE, PROBATE COURT —*Insane Person—Appointment of
Guardian Unauthorized.* A finding of a jury in an inquest that
the subject of the inquiry is feeble in mind, incapable of manag-
ing business affairs, and a typical imbecile, is not a finding of
insanity within the statutory meaning of the term and furnishes
the probate court no authority to appoint a guardian for such
feeble-minded person, and consequently gives the guardian no
right to maintain an action in his behalf.

Error from Franklin district court; CHARLES A.
SMART, judge. Opinion filed November 5, 1904. Af-
firmed.

*Gamble & Costigan,* for plaintiff in error.

*Deford & Deford,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : This was an action by George
Caple, as guardian of Frank L. Mitchell, to recover a
tract of land in Franklin county from Lucy A. Drew.
Mitchell, while a minor, inherited the land, and in
1876 his sister, Anna A. Weegar, was appointed
guardian of his estate, and under the direction of the
probate court a sale of the land was made to Levi H.
Weegar, husband of the guardian. Later, in Decem-
ber, 1878, the land was transferred to John J. Drew,

Caple v. Drew.

and upon his death it descended to his widow, Lucy A. Drew.   In his petition Caple alleged that on June 6, 1901, Mitchell was adjudged to be of unsound mind, and that he, Caple, was appointed guardian of Mitchell, and as such guardian he brought this action to recover the land.   In her answer Lucy A. Drew denied, generally, the allegations of the petition as to title, and also all other averments contained therein, except that she was in possession of the land.   She also alleged that the action was barred by several of the statutory limitations.   In verifying her answer she stated under oath :  ''She has read over her within and foregoing answer, and knows the contents thereof, and that the same are true as therein alleged.''

The validity of Caple's appointment as guardian is a vital question in the case.   If it was not valid, he has no right to maintain the action.   His appointment was alleged in his petition, and if the answer is a verified denial of the appointment and authority his guardianship and right to maintain the action is in issue.   (Civil Code, § 108 ; Gen. Stat. 1901, § 4542.) It is contended that, within the rule of *Kimble v. Bunny*, 61 Kan. 665, 60 Pac. 746, the answer was not so verified as to put the appointment in issue.   The rule of that case does not control here.   There the affidavit was that the facts stated in the answer were true, but as no facts were stated in the answer it was held that the affidavit was ineffectual.   In this case the affiant swears that the contents of the answer are true, which is in effect a statement that the denials of the answer are true.   The code contemplates that denials may be verified, as it provides that certain allegations shall be taken as true, ''unless the denial of the same be verified by the affidavit of the party, his agent or attorney.''   In the case above cited it

was suggested that the verification would have been sufficient if it had contained a statement that the denials of the answer were true.    Here there was a verified denial of the allegations of appointment and authority, which was sufficient to meet the requirements of the code, and to put those matters in issue. · On the plaintiff's testimony the court held the appointment to be void and directed a verdict in favor ·of the defendant.    Upon an affidavit alleging that Mitchell was of unsound mind and incapable of managing his affairs an inquest as to his condition was held on June 6, 1901.    Instead of following the provisions of the act of 1901, then in force (Gen. Stat. 1901, §§ 6570–6582), a jury of six persons was impaneled, and the following verdict returned :

"We, the undersigned, jurors in the case of Frank Mitchell, having heard the evidence in the case, are satisfied that said Frank Mitchell is feeble in mind, incapable of managing business affairs ; is a typical imbecile, a resident of the state of Kansas and county of Franklin ; that his age is thirty-nine years ; that his disease is of lifetime duration, dating from infancy ; that the cause is supposed to be heredity ; that the disease is hereditary ; that he is not subject to epilepsy ; that he does not manifest homicidal or suicidal tendencies."

In the order appointing Caple guardian the probate court recites that Mitchell has been adjudged feeble-minded and incapable of managing his affairs, and that Caple is appointed to care for and protect the estate, rights and property of "said feeble-minded." In the inquiry as to the condition of Mitchell the procedure of an inquest in lunacy was quite closely followed, but, as has been seen, Mitchell was not found to be insane and a fit person to be sent to the hospital for the insane.    Inquiries as to mental sound-

Caple v. Drew.

ness, and the appointment of guardians of those who are insane, at the time of this inquest were governed by the act of 1901. That is the later act, and as it covers the subject of insanity, and the appointment of guardians of those determined to be insane, it to that extent, at least, supplants and sets aside the provisions of the earlier act. In the act of 1901 insanity is specifically defined as follows :

"The word 'insane' in this act shall be construed to mean any person whose mind, by reason of brain-sickness, has become unsound, rendering such person incapable of managing or caring for his own estate or rendering him dangerous to himself or others, or who is in such condition of mind or body as to be a fit subject for care and treatment in a hospital for brain disease or insanity. No person idiotic from birth, or whose mental development was arrested by disease or physical injury prior to the age of puberty, and no person who is afflicted with simple epilepsy, shall be regarded as insane, unless the manifestations of abnormal excitability, violence or homicidal or suicidal impulses are such as to render his confinement in a hospital for the afflicted as herein provided a proper precaution to prevent him from injuring others or himself." (Gen. Stat. 1901, § 6570.)

Within this definition Mitchell cannot be regarded as insane, and, in fact, the plaintiff concedes that the provisions of the act of 1901 do not warrant his appointment as guardian for Mitchell. He does claim, however, that the earlier statute justified the action taken in the probate court. If those provisions had any force or application to the case in hand they would furnish no authority for Caple's appointment. In that act the precedent requirements for the appointment of a guardian were substantially the same as those of the later act, so far as the findings of mental condition are concerned. The essential fea-

tures of the findings, and the forms of the verdict, are prescribed in both statutes, and each requires a finding that the person is insane and a fit subject to be sent to a hospital or asylum for the insane. (Gen. Stat. 1901, §§ 3945, 6578.) The earlier statute gives no authority to appoint a guardian for feeble-minded persons. It provides :

"And if it be found by the jury that the subject of the inquiry is of unsound mind, or an habitual drunkard and incapable of managing his or her affairs, the court shall appoint a guardian of the person and estate of such person." (Gen. Stat. 1901, § 3945.)

The provisions with reference to a guardian's bond (§ 3949) plainly recognize that a guardian may be appointed for only two classes of persons—one, the insane, and the other, habitual drunkards incapable of managing their affairs. Mitchell was not found to be in either class, and so we see that if these provisions were in force they would have given the probate court no authority to make the appointment that was made. The later act, however, is the governing one, and when the legislature fixes the ground, and prescribes the methods, for the appointment of guardians for incapable persons a compliance with the statute is essential to the validity of an appointment. Here the finding was that Mitchell was of feeble mind —a condition far short of insanity, as defined by the statute. The further statement that he was a typical imbecile adds little, if anything, to the statement that he was feeble in mind. An imbecile, as the term is ordinarily used and understood, is one who is mentally weak, rather than insane, and the qualifying word "typical" was probably intended to mean that it was a characteristic or common example of imbecility— that it was not abnormal or unusual in degree, and

that it did not belong to other types of mental incapacity, such as idiocy or insanity.

The recent case of *Martin v. Stewart*, 67 Kan. 424, is a pertinent authority that feebleness of mind is not insanity, and that in cases of this kind the probate court is without authority to appoint a guardian of the person and estate of the subject of the inquiry until there has been a finding that he is insane.   There being a lack of authority in the probate court, the appointment is without validity and Caple without right to maintain the action.   See, also, *Matter of Clark*, 175 N. Y. 139, 67 N. E. 212; *Lindsley's Case*, 44 N. J. Eq. 564, 15 Atl. 1, 6 Am. St. Rep. 913; *Case of John Beaumont*, 1 Whart. 52, 29 Am. Dec. 33; *Meurer's Appeals*, 119 Pa. St. 115, 12 Atl. 868.

The conclusion reached makes the other questions argued immaterial; and, as we find no error in the record, the judgment of the district court is affirmed.

All the Justices concurring.