### McGOWN v. UNDERHILL et al.

(Supreme Court, Appellate Division, Second Department.   November 28, 1906.)

1. WILLS—SETTING ASIDE PROBATE—BURDEN OF PROOF.

   In an action to have a will, which has been admitted to probate, declared void on the ground of incapacity of the testator, the burden of proof is on the plaintiff to show the testator's incapacity under Code Civ. Proc. § 2653a, providing that the record of the probate of a will is prima facie evidence of its due attestation, execution, and validity.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 101–110.]

2. SAME—SUFFICIENCY OF EVIDENCE.

   In an action to have a will declared void, evidence *held* insufficient to show that the testator had not sufficient capacity to comprehend the condition of his property, his relations to the persons affected, and the scope and meaning of the provisions of his will, so as to render him incapable of executing it.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 137–161.]

Appeal from Special Term.

Action by Carrie U. McGown against Mary I. Underhill and others. From a judgment setting aside the probate of the will of John Henry Underhill, and from an order denying a new trial, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, HOOKER, RICH, and MILLER, JJ.

Ralph Earl Prime, Jr., for appellants.
Alfred E. Smith, for respondent.

WOODWARD, J.   This action is brought under the provisions of section 2653a of the Code of Civil Procedure to have the last will and testament of the late John Henry Underhill declared null and void;

the defects urged being lack of testamentary capacity on the part of the deceased and undue influence. Upon the trial of the issues the court took this latter question from the jury, and the only question submitted was in reference to the testamentary capacity of the deceased; the jury finding in favor of the plaintiff. Appeal comes to this court.

The will bears date of December 13, 1904, the testator dying on the 28th day of the same month; and, while there are some questions arising out of the trial which might be worthy of consideration, we shall dispose of the case upon the evidence, in the light of the well-established rule governing the determination of testamentary capacity. In Delafield v. Parish, 25 N. Y. 9, the court carefully reviews the authorities bearing upon this question, and asserts the rule, not since departed from, that:

"It is essential that the testator has sufficient capacity to comprehend perfectly the condition of his property, his relations to the persons who were, or should or might have been, the objects of his bounty, and the scope and bearing of the provisions of his will. He must, in the language of the cases, have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them. A testator who has sufficient mental power to do these things is, within the meaning and intent of the statute of wills, a person of sound mind and memory, and is competent to dispose of his estate by will."

And in Horn v. Pullman, 72 N. Y. 269, the court, in speaking of incapacity, say it cannot be "inferred from an enfeebled condition of mind or body," and that:

"Such a rule would be dangerous in the extreme, and the law wisely sustains testamentary dispositions made by persons of impaired mental and bodily powers, provided the will is the free act of the testator, and he has sufficient intelligence to comprehend the condition of his property, and the scope, meaning, and effect of the provisions of the will."

The will now before us has been admitted to probate, and under the provisions of section 2653a of the Code of Civil Procedure the record of the probate is prima facie evidence of the "due attestation, execution and validity of such will or codicil." That is, the plaintiff comes into court, in this action, alleging the invalidity of the will, which the law holds prima facie to be valid; and she is thus to sustain the burden of proof, she must establish the fact against the presumption, and she is bound to show, on the question of the testator's testamentary capacity, that he was not able to comprehend the condition of his property, his relations to those having natural claims upon his bounty and the scope and bearing of the provisions of his will. It is not enough to show that he might not have had this capacity, for the law, under the Code provision which gives the plaintiff her cause of action, presumes that he had the capacity, and she must show that he did not have the capacity.

It is conceded that the estate left by the testator was of the value of $10,000, and there being no evidence of undue influence, no evidence of fraud in the making and executing of the will, and no evidence of any prompting on the part of any one in the scheme of the

will, it is important to consider what the testator's expressed intentions are, that we may judge of his capacity from his acts in reference to the particular business in hand on the 13th day of December, 1904, when this will was made and executed. In the first clause he directs that his esate be converted into cash; in the second he directs the payment of his debts and funeral expenses; in the third he makes a bequest of $300 to a church; in the fourth he makes a bequest of $200 to the pastor of a certain church in Yonkers; in the fifth there is a bequest of $600 to one Thomas Hughes; in the sixth a bequest of $1,000 to the widow of Isaac Roberts of Tuckahoe, where the testator resided ; in the seventh he makes a bequest of $500 to Joseph Carson Underhill, a relative; in the eighth there is a bequest of $500 to the widow of William Roberts; in the ninth he gives to his broker, Thomas W. Thorne, $2,000; and in the tenth he gives to his sister, the plaintiff in this action, Caroline A. McGown, the sum of $5. These bequests aggregate $5,105, or about one-half of his estate. He was unmarried, and lived with his brother William James Underhill and his sister Mary Ida Underhill, and to these two latter he gave the remainder of his estate, aggregating about $5,000. There is not the slightest evidence that the testator was prompted in the slightest degree by any one in reference to the disposition of his property, or as to its amount. None of the gifts are fantastic or unreasonable, so far as appears from the evidence. All of them were within his means, and the residuary estate, going to the brother and sister with whom he resided, was of one-half of his property. None of his heirs at law were ignored, and, aside from the small gift to the plaintiff in this action, there is nothing to indicate even a prejudice as against any of those who might have expected to share in his bounty. "A man's testamentary disposition of his property," say the court in Dobie v. Armstrong, 160 N. Y. 584, 55 N. E. 302, "is not invalidated, because its provisions are unequal, or unjust, or the result of passion, or of other unworthy or unjustifiable sentiments. It is natural, and therefore usual, to make provision for a child; but, under our governmental institutions, no obligation to do so is imposed upon the parent, and the presumption of validity is not affected by the failure to do so, alone. Nor is the presumption in favor of a will overcome by showing that the testator was of advanced age or of enfeebled condition of mind or body."

Here we have a will, showing upon its face an intelligent grasp on the part of the testator of his affairs. He has disposed of about one-half of his property in specific legacies, and the remainder he gives to the brother and sister who have afforded him a home. No one suggests that this is not the will which he drew or dictated. There is no evidence whatever that any one made any suggestion as to the beneficiaries, or in reference to the amount of the property, or as to the scheme of the will, which is entirely rational; and yet the jury in this case has determined that the man who made this will, complying with all of the requirements of an intelligent disposition of property by will, was not of sound, disposing mind. Where is the evidence to support this conclusion? Certainly it is not found in the will itself, nor in any

of the surrounding circumstances under which it was drawn and executed.

It is true, of course, that the evidence tended to show that the testator was disgustingly dirty and vulgar, that he was eccentric and miserly in his conduct, and that he was somewhat given to drink, and two physicians testified in a very general way that they regarded the man as demented, as an imbecile; but none of the evidence, as we read it, goes to the length of saying that the testator did not comprehend the extent and value of his property, or that he did not, on the day of making that will, have the capacity to make an intelligent disposition of his money. An imbecile is neither a lunatic nor an idiot. He is defined "as one destitute of strength, either of body or mind; one who is weak, feeble, impotent, decrepit. Imbecility is defined as the quality of being imbecile; feebleness of body or mind." 15 Am. & Eng. Ency. of Law, 1019. It is not a word of exact meaning, and imbecility is not a disqualification for making a will, provided the testator has the capacity which the courts require, and that is not determined by any mere generalization of the testator's capacity, but is to be determined from his acts in reference to the particular business in hand; and in the case now before us the will itself, in connection with the conceded facts, shows that he knew all about his property, and that he had clearly in mind the objects of his bounty, and that he intended to and did make an intelligent, and, so far as appears, an entirely equitable disposition of his estate. The plaintiff, a married sister living in Mt. Vernon, was given $5; his brother and sister, who afforded him a home, were given the residuary estate, aggregating about $5,000; and, if the disgusting tales told of the testator's habits are true, the sister in Mt. Vernon had rather the best of the transaction, for surely a mere money consideration could not compensate for having so disgusting a creature about one's home.

It seems entirely clear to us that the court erred in charging the jury that the burden of proof of the testator's testamentary capacity was upon the defendants. The statute clearly places that burden upon the plaintiff in a case of this character, by making the production of the will and the record of its probate presumptive evidence of the validity of the will. We are of the opinion, however, that there was no evidence in this case to meet the issue raised by the pleadings, and that there was no evidence to establish lack of testamentary capacity on the part of the testator; the will itself, unquestioned as to any of the details of its making and execution, showing conclusively that the testator had the capacity demanded by the law, and that he was capable of comprehending the amount of his property and of intelligently disposing of the entire estate.

The judgment and order appealed from should be reversed, with costs. All concur.