## Neff et al. v. Neff.

*Divorce—Annulment of marriage—Imbecility of husband—Jurisdiction.*

1. Jurisdiction to declare a marriage void on account of the lunacy of one of the contracting parties has never been conferred upon the courts of Pennsylvania.

2. Where, on a petition to annul a marriage on account of the imbecility of the husband at the time of the wedding, although the court finds as a fact that the husband was an imbecile at the time, it will, nevertheless, dismiss the petition for lack of jurisdiction.

Petition to declare marriage void. C. P. Dauphin Co., Sept. T., 1925, No. 333.

*Earnest & Milnor,* for plaintiffs.

*Robert Stucker* and *Carl B. Shelley,* for defendant.

WICKERSHAM, J., Nov. 3, 1926.—This was a petition for a decree annulling the marriage entered into by George C. Neff and Jessie Speraw. The matter in controversy was submitted to S. S. Rupp, Esq., as master, who, after finding the facts, adduced from the testimony, oral and documentary, concluded: "1. The supposed marriage contract between George C. Neff and Jessie Speraw is null and void by reason of the mental incapacity of George C. Neff to enter into a marriage contract at the time the marriage ceremony was performed.

"2. The court has no jurisdiction to decree the said marriage contract between George C. Neff and Jessie Speraw Neff null and void, as prayed for."

The master recommended that the petition for a decree to annul the marriage contract be dismissed, which was alleged as error in exceptions filed by counsel for the plaintiff.

The master found, *inter alia,* the following facts, which are supported by the evidence and which we adopt as our own (see page 8, Master's Report):

"8. That at the time the said marriage license was issued to George C. Neff and Jessie Speraw on April 4, 1925, George C. Neff was mentally ill and an imbecile.

"9. That at the time the said marriage license was procured and the marriage ceremony performed, George C. Neff, although not a lunatic, yet was of unsound mind, was mentally ill and had not sufficient mental capacity to enter into a contract of marriage and to understand and comprehend the nature and obligations thereof."

An imbecile is a person destitute of strength, whether of body or mind; feeble; mentally weak; stupid; fatuous; characterized by or arising from mental weakness; inane; idiotic; as, imbecile conduct. The term is used synonymously with weak, feeble, feeble-minded, idiotic: Websters' New International Dictionary. An imbecile, as the term is ordinarily used and understood, is one who is mentally weak, rather than insane: Caple *v.* Drew, 78 Pac. Repr. 427, 429, 70 Kan. 136. An imbecile is defined as one destitute of strength, either of body or mind; one who is weak, feeble, impotent, decrepit. Imbecility is

Neff et al. *v.* Neff.

defined as the quality of being imbecile; feebleness of body or mind. An imbecile is neither a lunatic nor an idiot: McGown *v.* Underhill, 101 N. Y. Supp. 313, 316.

The evidence taken in this case, which was voluminous, indicates that the plaintiff's imbecility was of mind rather than body.

Dr. David I. Miller, a physician of the City of Harrisburg, testified that he knew the plaintiff "since he was a kid;" that he treated him professionally. In answer to the question, "Q. What have you to say regarding the mental capacity or condition of George Neff generally?" the doctor testified: "A. George, from a boy, always had an undeveloped mind. He always had a most decided evidence of mental weakness. He had fixed illusions, or imagined things that were not true. He would imagine, I remember, during the war, he imagined he was a great soldier. He was an orderly in the Medical Department in Texas, but he had the idea he was a bigger fellow, and you couldn't make him believe he wasn't. He had fixed ideas in other things. . . . For instance, when Roosevelt was running for President, George got the idea that he was well acquainted with Roosevelt; which, of course, wasn't the truth; he had never seen Roosevelt. He would talk to me and to the family and tell us how intimate he was with President Roosevelt, which showed there was a mental deficiency there." (N. T., page 100.)   ". . . In his studies, he never could learn. His father sent him to Elizabethtown to a school; he spent lots of money for education. After two or three years there, he knew less than when he went down. . . . As long as Neff has a mother and a family who can control him and can keep close watch, he can get along all right at home; otherwise he would need hospitalization. Q. Will the case become aggravated as he grows older? A. Yes, sir. Q. From your frequent contact and from your professional treatments that you spoke about, would you say that George Neff had mental capacity to enter into a contract of marriage, realizing the full responsibility of such a contract? A. Positively, no." (N. T., page 101.) "Do you think he had such a mental capacity on April 4, 1925? A. No, sir; I do not." (N. T., page 102.)   The doctor further testified (see N. T., page 103): "A. He would allow a woman to run away with him on account of sexual relations between them. In my office, shortly after his marriage, I said: 'George, what did you ever marry a woman so old for?' He said: 'I'll tell you, Doc—I'll tell you, Doc, I went around there and she said, 'George, we're going to get married,' and I said, 'No, we're not going to get married,' and she said, 'We're going to get married soon. Now listen, if you don't marry me, my boy is going to shoot you; he has a gun.' I said, 'Well, George, you wouldn't leave that scare you, would you?' and he said, 'Yes.' "

Dr. Charles I. Trullinger, a physician of the City of Harrisburg, testified he had known the libellant twenty-two years. He corroborated the testimony of Dr. Miller.

We think, therefore, that at the time the marriage ceremony was performed George C. Neff was incapable of entering into the marriage contract or of understanding the obligations of such a contract. We think, however, this being an application to have the marriage contract declared null and void, that we have no jurisdiction to entertain and decide the question at issue. Jurisdiction to declare a marriage void on account of the lunacy of one of the contracting parties has never been conferred upon the courts of Pennsylvania, and consequently those courts have no such jurisdiction: Pitcairn *v.* Pitcairn, 201 Pa. 368, 373. We have considered the facts in this case because, without doing so, we would be unable to ascertain whether or not we had jurisdiction over the subject-matter in controversy. Having determined that the plaintiff

Neff et al. *v.* Neff.

was without mental capacity to enter into the marriage contract on April 4, 1925, because of mental imbecility, we are forced to the conclusion which we have just stated, to wit, that we have no jurisdiction to entertain and decide the matter in controversy, and, therefore, we concur with the recommendation of the master, that the libel be dismissed, and it is so ordered.

From Homer L. Kreider, Harrisburg, Pa.