No. 29,950.

In the Matter of Susan H. Seaverns, an Incompetent Person. Emma H. Rouse and Susan H. Seaverns, *Appellants*, v. James E. Taylor, as Guardian of the Person and Estate of Susan H. Seaverns, *Appellee*.

(299 Pac. 931.)

Opinion filed June 6, 1931.

*W. E. Ward,* of Sharon Springs, for the appellants.

*C. A. Spencer* and *J. H. Jenson,* both of Oakley, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This appeal is from an order of the district

court of Wallace county denying the motion and application of Susan H. Seaverns, an incompetent, and her sister as her next friend, to remove the guardian appointed by the probate court and quash the guardianship proceedings in which Mrs. Seaverns had been adjudged an incompetent. The motion and application was made in a proceeding pending in the district court on appeal from the probate court, where an application had been made by the sister of the incompetent to set aside the guardianship proceedings because they were void and because Mrs. Seaverns had been restored to her right mind.

In July, 1929, Mrs. Seaverns was a widow, seventy-one years of age, living alone on her farm in Wallace county, which consisted of 2,800 acres, and was receiving a pension from the government of $30 a month. Proceedings were instituted in the probate court of Wallace county by the sister of Mrs. Seaverns, who lived in Portland, Ore., to have her adjudged incompetent. She was so adjudged in July, 1929, and her sister was appointed her guardian and took her to her own home in Portland, Ore., and declined and refused to return her upon the order of the probate court. Three months after this appointment the probate court removed the sister as guardian and appointed James E. Taylor as guardian, who qualified in October, 1929, and has been such guardian since that time. An appeal was attempted from this order of removal of the sister and the appointment of Mr. Taylor, but not perfected, and in March, 1930, the sister commenced this proceeding in the probate court of Wallace county, as above stated, to set aside the guardianship proceedings because they were void, and because Mrs. Seaverns had been fully restored to her right mind.

Mr. Taylor, the guardian, employed counsel to attend the taking of depositions in Portland, Ore., where many witnesses were examined as to the state and condition of the mind of Mrs. Seaverns, and the whole matter was tried in probate court to a jury, and a verdict was rendered on August 30, 1930, finding she had not been restored to her right mind and that her guardian should not be discharged. This verdict was approved by the probate court, and the sister appealed to the district court from this verdict and decision.

Instead of proceeding in the district court with a retrial of the whole matter, on appeal the matter came on for hearing on part of the issues only, as raised by the motion and application of Mrs.

Seaverns and her sister to remove the guardian and quash the guardianship proceedings because they were void, leaving entirely out of the hearing on this motion and application the question of her being restored to her right mind, which was a part of the case appealed. After the ruling on the motion involving the validity of the adjudication of incompetency the appeal to this court was taken on that feature only, without proceeding to hear and determine the question of her having been restored to her right mind. Under the ruling of the trial court upholding the validity of the adjudication of incompetency she in her own right, and her sister in her behalf, then had and still have the right to a trial in the district court of the question of having been restored to her right mind.

Upon the adverse ruling on the question of the validity of the adjudication of incompetency in the probate court the appellants urge many reasons why the ruling is erroneous and the adjudication wholly void. It is not contended that the adjudication could be attacked at this time and in this manner if it were only voidable, but the contention is that it is absolutely void.

The first and strongest point pressed by the appellants is want of notice required by statute, which is jurisdictional. The probate record states that "due notice has been served," but the same record shows it was read to Mrs. Seaverns by the probate judge in open court on the day on which the trial was had instead of being five days before the trial. Generally speaking, the purpose of notice is to afford an opportunity to appear at the hearing, and it has in a measure served its purpose when the party served is personally present, and this principle was applied to proceedings of this kind in the matter of *In re Wellman, Petitioner,* 3 Kan. App. 100, 45 Pac. 726. But authorities are plentiful to the effect that opportunity and actual presence do not constitute a waiver in cases of this kind because of the alleged mental inability of the party to properly care for her own rights and interests. We are not ready to say, if this case is governed by the statute requiring the five-day notice, that the failure to give the notice five days in advance of the hearing was not a jurisdictional matter.

There are two different chapters under which guardianship proceedings can be had for incompetents or persons of that general class, chapters 39 and 76 of the Revised Statutes of 1923. The five-day notice is not a specific requirement under the latter chapter. R. S. 76-1203 and succeeding sections of that article prescribe

the course of procedure and define the term "insane," and section 1215 particularly refers to the appointment of a guardian. This act defines the word "insane" as follows:

". . . any person whose mind, by reason of brain sickness, has become unsound, rendering such person incapable of managing or caring for his own estate or rendering him dangerous to himself or others, or who is in such condition of mind or body as to be a fit subject for care and treatment in a hospital for brain disease or insanity." (R. S. 76-1203.)

The act was passed in 1901, being chapter 353 of the session laws of that year.

R. S. 39-201 and succeeding sections were passed in 1907, and although enacted later by six years did not eliminate or repeal expressly or impliedly any of the provisions of chapter 353 of the Laws of 1901, as is definitely stated in R. S. 39-235, or section 35 of chapter 247, Laws of 1907, which is as follows:

"Nothing in this act contained shall be held to repeal, alter or affect the provisions of chapter 353 of the Session Laws of 1901, providing for inquest in lunacy in certain cases, and as to such cases, and the commitment of insane persons to the state hospitals, that act shall govern. All guardians appointed under section 62 of said chapter 353 of the Session Laws of 1901 shall have and exercise the same rights, powers and duties as guardians appointed under this act."

Section 62 of chapter 353, Session Laws of 1901, is the guardian section above mentioned as R. S. 76-1215.

The first section of this act outlines the class of persons to whom the act is to apply in the following language:

"When information in writing, verified by affidavit, shall be given to the probate court that anyone in its county is insane, a lunatic, an idiot, an imbecile, a distracted person, a feeble-minded person, a drug habitue, or an habitual drunkard, and for any of these reasons is incapable of managing his affairs, and that it is necessary that a guardian be appointed for his person or estate, or both, and praying that an inquiry therein be had, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury." (R. S. 39-201.)

Appellants cite *Martin v. Stewart,* 67 Kan. 424, 73 Pac. 107, and *Caple v. Drew,* 70 Kan. 136, 78 Pac. 427, which show that the appointment of a guardian without a particular and specific finding of the court and jury as to the mental condition of the alleged incompetent person is without authority because the statutes definitely apply only to certain named mental conditions as a basis for such appointment. The findings in both of these cases were un-

der a law that has since been repealed. Both cases refer to the law of 1901, then in existence, but reasons are pointed out why the matter could not have been considered as being heard under that law, which reasons do not fully apply in this case—one of the reasons being the necessity of a jury trial under one act and not under the other. Appellant relies upon the ruling in the latter case because it holds that the act of 1901 has reference only to insane persons, and the finding of the court and jury in that case was only that the person was "feeble in mind, incapable of managing business affairs" and so classes the finding in the present case.

The finding in the case at bar was not by a jury, but by a commission, which was in harmony with the provisions of R. S. 76-1207 and 76-1208, and the probate court made the finding and order, which was authorized by R. S. 76-1214. The finding of the probate court was "illness of insanity," which is within the limits insisted upon by the appellant. It is true the commission in its general finding did not use the term "insanity," but in addition to the term incompetent it answered a number of questions as to her history and condition and stated "that the cause is supposed to be mental disease—senile dementia." From these answers and statements in the certificate of the commission the court's finding and order as above stated was made.

The Caple case, *supra*, was decided before the enactment of the law of 1907, which recognizes in R. S. 39-235 the appointment of a guardian under chapter 76, and the Caple case in another respect fails to assist us in this case very much because it was there conceded that the appointment of a guardian could not have been warranted under the facts of that case under the act of 1901. (p. 139.)

It can, with equal propriety, be said in this case that the evident intention of the court and parties interested in this matter was to conduct it as a proceeding under chapter 39, but the legal proposition is if it lacks something essential under the procedure of this chapter, especially something jurisdictional which is not exacted under another chapter covering the same or similar purpose, may it not be held to be a valid proceeding under the provisions of the latter chapter? If there is doubt as to the jurisdiction of a court of general jurisdiction with reference to a judgment rendered by it, the presumption is always in favor of its jurisdiction (*Bank v. Security Co.*, 65 Kan. 642, 70 Pac. 646), and the same rule extends to the judgments of the probate court (*Watkins v. Mullen*, 62 Kan.

1, 61 Pac. 385). In a recent case, *Beeler v. Beezley*, 126 Kan. 268, 267 Pac. 1112, it was said:

"There are two methods of dealing with the insane. One has for its purpose guardianship of person or property, or both; the other, confinement in a state hospital, and incidentally appointment of a guardian." (p. 269.)

The jurisdiction in that case was never acquired because of the absence of the incompetent from the state. Although the matter of guardianship is incidental to the provisions under chapter 76, yet there appears to be no good reason why the proceedings may not be recognized as valid under it when there is no jurisdictional element lacking and the finding of the court was within the provisions of that act. We think on this jurisdictional feature that the trial court was justified in holding the adjudication of the probate court valid and not void.

In the same connection it is insisted that the failure of the probate court to appoint counsel was a jurisdictional matter and rendered the proceedings void. We cannot agree that this failure lost the court jurisdiction, if it had otherwise been acquired, but at most would make the proceedings voidable. R. S. 39-203 gives the one on trial the right to be assisted by counsel, and if none has been selected it is the duty of the court to appoint one. Under R. S. 76-1207 it would appear that counsel is to be appointed by the court when inquests are made by a jury and not necessarily when the hearing is by a commission, as in this case.

Appellants refer to the affidavit of the sister, which was the basis of the inquiry, as not being a sufficient basis for any proceeding under chapter 76. It does not use the term "insane," but it does state that the party is "suffering under mental derangement," and the same degree of formal pleading is not required in inferior courts as in the district courts.

Many other points are emphasized by appellants, but they come directly or indirectly under the jurisdictional and other features above discussed. Another matter mentioned by the trial court in connection with his ruling was the inconsistent attitude of the sister who instituted the original proceeding and also instituted this proceeding to set that proceeding aside by attempting to show that what she did and was permitted to accomplish was void and without any authority whatever. Her contradictory position is not commendable, and if the ultimate matter involved were not for and in behalf of another, could have deserved nothing further than

censure. But full consideration was given the matter in the trial court and on review we find no error in overruling of the motion to remove the guardian and to quash the guardian proceedings.

The hearing on the other branch of the case, namely, that Mrs. Seaverns has been restored to her right mind, is still open and is all important. The possible or probable financial gains or benefit of other parties or relatives will be of no concern whatever in that connection and if she has been restored to her right mind the guardianship should be closed regardless of financial consequences.

The judgment is affirmed and the cause is remanded with directions to proceed with a trial of the remaining branch of the case.