No. 36,884

ELIZABETH STEINKIRCHNER, *Appellant*, v. W. P. LINSCHEID, *Appellee.*

(188 P. 2d 960)

Opinion filed January 24, 1948.

*Emmet A. Blaes,* of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Roetzel Jochems* and *Robert G. Braden,* all of Wichita, were with him on the briefs for the appellant.

*J. G. Somers,* of Newton, argued the cause, and *Arthur N. Turner,* of Newton, was with him on the briefs for the appellee.

The opinion of the court was delivered by

BURCH, J.: The appeal in this case is from a declaratory judgment of the district court and involves consideration of a constitutional provision and a statute of Kansas pertaining to alienation of homestead interests. The district court held, in substance, that when an incompetent person has an interest in a homestead which was occupied by the family of the incompetent at the time the declaration of incompetency occurred, the probate court cannot authorize the incompetent's guardian to join in the sale of the property by finding sometime later that the property was no longer the homestead of the incompetent and his family. The problem presented may be stated as follows: When a homestead is once occupied by a husband and wife and one of them is adjudged incompetent, may the sane spouse destroy the homestead rights of the insane spouse by abandoning the homestead? The question develops in this case from the following facts:

The plaintiff, Elizabeth Steinkirchner, purchased with her own money a residence in the city of Newton, Kan., in 1926, and title to it was taken in her name. At that time the plaintiff and her husband, Henry Steinkirchner, had two small children, and two other children were born thereafter. The family lived in the property without interruption until 1938, when Henry Steinkirchner became mentally deranged and was sent to a veterans' hospital. In the same year he was legally adjudged incompetent by the probate court of Harvey county, Kansas, and his wife, the plaintiff, was appointed guardian for her incompetent husband. The wife and children continued to live in the property until March, 1939, at which time they moved to Wichita because the mother believed there would be better opportunity there for her to obtain employment and because, in

her judgment, better facilities were available in Wichita for the higher education of the children. When she and the children moved to Wichita, she rented the Newton house to a tenant. After renting a house in Wichita for two years, the plaintiff purchased a home there and she and the children moved into it. At the time the action was brought, she and the three unmarried children occupied the Wichita residence as their home, and she contends that such property is the family homestead. After renting the Newton property for many years, the plaintiff contracted to sell it to the defendant. In connection with the examination of the title to the Newton property, the defendant's attorney refused to approve the title because, in his opinion, the incompetent husband of the plaintiff still had a homestead interest in the Newton property. The abstract of title disclosed that certain legal proceedings had occurred, the substance of which will be subsequently set forth herein. As a consequence of the objection made to the title by the examining attorney, the parties apparently agreed that the question should be answered by a declaratory judgment and therefore the present action was brought. A résumé of the legal proceedings follows.

The plaintiff's petition alleges that an actual controversy exists between the parties involving a substantial question of legal rights and the proper interpretation of the applicable provision of the constitution and the statutes. After alleging the general facts herein set forth, the petition further alleges that prior to the filing of the declaratory judgment action, the plaintiff as guardian of her incompetent husband had instituted proceedings in the probate court of Harvey county in accordance with G. S. 1945 Supp. 59-1808, for the purpose of obtaining authority from such court to sell the incompetent's interest in the Newton property and that on the 21st day of September, 1946, the probate court of Harvey county entered an order in which such court found that the Newton property was not the homestead of the plaintiff or of her incompetent husband and that such order authorized the plaintiff to sell the inchoate right of her husband in the Newton property. Copies of the petition for authority to sell and of the order authorizing the sale were attached to the petiton filed in the declaratory judgment action as a part thereof. Examination of the attached petition and the order discloses that the order of sale was issued on the same date the petition was filed and that the order was made without notice

to any parties whomsoever and without a guardian *ad litem* being appointed for the incompetent.

The petition filed in the declaratory judgment action closes by alleging that notwithstanding the probate court found that the Newton property was not the homestead of the incompetent, the defendant nevertheless contends that the Newton property does constitute the homestead of the incompetent husband and that by reason thereof G. S. 1945 Supp. 59-1808, prohibits its alienation, and further that the proceedings taken thereunder in the probate court are void. The prayer to the petition requests that the district court declare that the incompetent husband is not possessed of a homestead right in the Newton property and that the order of the probate court authorizing the plaintiff to sell the right of her incompetent husband in such property was valid and final.

A demurrer was filed by the defendant to the petition in the declaratory judgment action and upon consideration thereof and of all of the pleadings and the order referred to in the probate proceedings, the court sustained the demurrer. In the journal entry covering the order sustaining the demurrer, the district court found that the incompetent husband still had a homestead right in the Newton residence which was occupied by the family up to the time the incompetent husband was taken to an institution and that such residence was the involved property. The district court further found that the order for the sale of the incompetent's interest in such property was not binding upon the incompetent husband and did not preclude him from asserting a homestead right in the property and that the order authorizing the sale of it was void. Notice of appeal followed. The plaintiff's specifications of error assert that the trial court erred in sustaining the defendant's demurrer to the plaintiff's petition and in holding that the incompetent husband has a homestead interest in the Newton property, and further erred in holding that the proceedings in the probate court which culminated by authorizing the sale of the homestead interest were void.

A majority of the members of this court are of the opinion that the district court's ruling was correct. The record clearly shows that there never has been any controversy over the fact that the plaintiff's husband had a homestead interest in the property at the time he was adjudged incompetent. Because of our constitutional prohibition the plaintiff could not alienate the homestead of her in-

competent husband without his consent. Abandonment is a species of alienation. (*Southern v. Linville*, 139 Kan. 850, 33 P. 2d 123.) Section 9 of article 15 of the constitution of Kansas reads, in part, as follows:

"A homestead . . . occupied as a residence by the family of the owner, . . . shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relationship exists; . . ."

Moreover, there never has been in this case any valid legal proceedings in which the guardian of the incompetent could have been properly authorized to sell his homestead interest. Under the applicable statute, the probate court cannot authorize a guardian to sell the right of an insane spouse in a homestead. G. S. 1945 Supp. 59-1808, prohibits such a sale. It reads:

"The guardian of the estate of a spouse may, with or without notice, upon order of the probate court, sell, convey, lease or mortgage, any real estate, *except the homestead,* the title to which is in the other spouse; . . ." (Emphasis supplied.)

By reason of the wording of the statute, it is clear that the statute pertains and is applicable only to the sale of property which is not a homestead.

Counsel for the plaintiff contend that the order of the probate court on September 21, 1946, in which the court found that the property was not a homestead, was binding upon the incompetent and was a final adjudication which cannot be collaterally attacked. Such order specifically found that ". . . the said premises do not constitute the homestead of any of the parties, . . ." But such order was entered in a proceeding to which the incompetent husband was a party in name only. When the incompetent's guardian filed a petition in the probate court for authority to sell the property she may have been seeking to sell the property for her own advantage. The personal interest of Mrs. Steinkirchner in filing the petition and her interest as the guardian of her incompetent husband in legal contemplation were adverse and hostile. The incompetent was given no notice of any kind of the filing of the petition or of the hearing upon it and no guardian *ad litem* was appointed for him. In such a situation, it should not be said that the probate court had jurisdiction of all the necessary parties whose rights were affected. As to the significance of a guardian representing adverse interests, see *Osment v. Trout*, 156 Kan. 120, 131 P. 2d 640, wherein it was set forth:

"Although in instances appointment of a guardian *ad litem* may be discretionary, where, as here, the appointed and acting guardian was proponent of a claim, failure of the court to appoint a guardian *ad litem* was an abuse of discretion." (p. 122.)

The opinion continues:

"Without elaboration, it may be said that an order made without notice and without appointment of a guardian *ad litem* authorizing a guardian to use assets of her ward to pay a claim proposed by her was not a final order or decision. It is obvious that in such case there was no one to appeal." (p. 122.)

The plaintiff asserts, however, that the probate code provides that an order such as she procured may be had with or without notice. It cannot be emphasized too impressively that probate courts are not always justified in not requiring notice in proceedings under the provisions of the present probate code when the involved statute reads that the hearing may be held "with or without notice." If the proceeding is not formal in its nature and the substantial rights of unrepresented, interested parties are involved, a probate court should always require that notice be given to the interested parties even though the statute may read that the hearing may be had "with or without notice." Notice always should be given if the possible rights of interested parties could be adversely affected by the ruling or finding under consideration by the probate court. In the case of *Paronto v. Armstrong,* 161 Kan. 720, 171 P. 2d 299, a party claiming to be a custodian of a child filed a petition for guardianship. The involved statute provides that if the petition was filed by a "parent, custodian, or testamentary guardian" the court might hear the same "with or without notice." This court held, however, that the party filing the petition was not the custodian of the minor child and that under the statute service should have been had upon the ward, a guardian *ad litem* should have been appointed for him, and that notice should have been given to his nearest kindred. The opinion in the cited case reads:

"The probate code was constructed upon the plan of adversary, as distinct from *ex parte* procedure. Parties substantially affected by probate court rulings are entitled to be heard. Notice and an opportunity to be heard are essential to due process of law." (p. 727.)

In the case of *In re Estate of Schroeder,* 158 Kan. 783, 150 P. 2d 173, this court held that an order of the probate court setting apart land as a homestead without notice to a creditor whose claim was pending in that court, was void as to the creditor for lack of notice.

The statute involved in the last-cited case also provided that the petition to set aside the land as a homestead could be heard "with or without notice." But this court held that the creditor had an interest in the question whether the land was to be set aside as a homestead and was entitled to notice of the petition being filed. It follows in the instant case that because the interests of the incompetent might have been adverse to those of his guardian, that a guardian *ad litem* should have been appointed, and that such omission, together with the failure on the part of the probate court to give the incompetent any notice whatever of the pendency of the proceeding which affected his property rights, resulted in a declaration against his possible interests without due process of law. Consequently, the finding of the probate court to the effect that the involved property was not the homestead of the incompetent was a nullity because the court did not have proper jurisdiction of a necessary party to the action. The finding of the probate court that the property was not a homestead and the order authorizing its sale without jurisdiction were subject to attack, either directly or collaterally, whenever it might be shown, as a matter of fact, that the real estate was a homestead. For an analogous situation, see *Magnolia Petroleum Co. v. Moyle*, 162 Kan. 133, 175 P. 2d 133.

In addition to the foregoing, it should be noted that if this court reached a contrary conclusion, the court in effect, would be ignoring a clear indication of legislative intent to preserve and retain the constitutional rights which prohibit the alienation of a homestead without the joint consent of a husband and a wife while that relationship exists. In 1943 the state legislature provided that there should be submitted to the people for adoption or rejection an amended homestead exemption provision. It embodied a provision previously existing, with a proviso reading:

"That the legislature by an appropriate act or acts, clearly framed to avoid abuses, may provide that when it is shown the husband or wife while occupying a homestead is adjudged to be insane, the duly appointed guardian of the insane spouse may be authorized to join with the sane spouse in [executing certain mortgages or certain mineral leases]." (Laws 1943, ch. 161, § 1, p. 289.)

The people voted adoption of the proposed amendment in 1944, and the legislature of 1945 passed certain conforming legislation which appears as G. S. 1945 Supp. 59-2314 to 2322, both inclusive, to which reference is made. Thus, it will be seen that the members of the legislature and the people were willing to amend the constitution

only to the extent of permitting a homestead to be *mortgaged or leased* under certain carefully-limited conditions clearly framed to avoid abuses. In furtherance of the amendment, which only went to the extent of authorizing the mortgaging and leasing of a homestead, the legislature, in framing legislation to avoid abuses, sought to prevent such abuses in enacting G. S. 1945 Supp. 59-2317, as follows:

"In every proceeding brought under this act and immediately upon the filing of a petition as provided in section 2 [59-2315] of this act, a guardian *ad litem* shall be appointed for the insane spouse, who shall make an independent investigation of the facts and representations made in the petition, . . ."

It may be added by way of observation that while the resolution for the amendment was pending before the judiciary committees of the legislature in 1943, the committees were asked to enlarge the amendment under consideration by giving a guardian of an insane spouse authority to sell the homestead and that the legislature refused to make this suggested amendment.

Consequently, a holding by this court that a homestead interest in property can be alienated entirely without the appointment of a guardian *ad litem* would be wholly inconsistent with the expressed legislative mandate to require such an appointment when the homestead property is only to be mortgaged or leased for certain specified purposes. Surely, it was never intended by those who adopted or amended the constitution or passed the legislation applicable to its amendment that a greater interest in homestead property could be disposed of with less precaution than is required to effect a partial contingent conveyance of a lesser interest therein.

The ruling of the district court, sustaining the demurrer, is affirmed.

HARVEY, C. J., and PARKER, J., concur in the result.

BURCH, J. (dissenting): The majority decision by analogy I fear may cast upon the titles to much real estate in Kansas a cloud of contestable incertitude. Prior to the declaratory judgment the proper probate court had decreed that the involved property was not the homestead of the incompetent husband. The decision of this court now is, in substance, that because the incompetent's guardian may have had an interest possibly adverse to the best interests of the incompetent, such possibility necessitated the appointment of a guardian *ad litem* and that the failure to make such

appointment, together with the absence of any notice to the incompetent, resulted in the probate court not having jurisdiction. This court holds that such omissions and the fact that the property was actually a homestead may be asserted in a collateral attack upon the probate court's decree. As a consequence, examiners of title in this state must determine whether sales by guardians, though made with the approval of the probate court, are tainted with the possibility of the guardian having had an adverse interest unless such court appointed a guardian *ad litem* for the incompetent or gave the mentally incompetent, uncomprehending person some notice to comprehend. The rule that a possibility of adverse interest and lack of notice necessitate the appointment of a guardian *ad litem* is not limited to cases of homesteads if the logic of the majority opinion is to be followed. Clearly, examiners of title cannot rely upon a finding of a probate court that property is not a homestead unless the rule has been complied with. If such be the law, the situation is sad because the examiners' determinations cannot be regarded as the equivalent of judicial decisions and scores of quiet-title suits may follow. Analysis of the serious problem necessitates further consideration of the facts.

The record in the instant case discloses that the proceedings in the probate court were instituted by the incompetent's legally-appointed guardian. All parties to the action concede that the guardian acted at all times in furtherance of the best interests of her insane spouse and their children. The incompetent husband has not been deprived of a homestead. The record indicates that he may have acquired a better one. The contention is advanced by counsel for the plaintiff that the probate court's conclusion to the effect that the involved property was not a homestead was not even erroneous. In support of such contention they assert that some of our decisions hold that the constitutional prohibition against alienation of a homestead without joint consent continues only so long as the property is "occupied as the residence by the family of the owner; . . ."; that the Newton property was not so occupied; and further that no party, competent or otherwise, can claim a homestead interest in two properties at the same time. It is, therefore, argued that the probate court in the instant case properly found that the Newton property was not the homestead of the incompetent. This court need not reach decision on the question. The point is the probate court passed on the question regardless of whether the judgment

was correct. There is no contention that the probate court did not act in good faith in reaching its judgment and there is no contention of fraud or lack of good faith on the part of the guardian. Later, in the declaratory judgment action the district court held, in substance, that by reason of facts asserted for the first time in such action, the involved property was the homestead of the incompetent person. It is apparent that the district court's finding to such effect directly contradicts the opposite finding made by the probate court. True it is, that the district court's conclusion may have been justified by additional facts not considered by the probate court in making its finding but the issue was the same.

The determination of whether property is a homestead may turn upon a finding of fact, a rule of law, or the result may follow from an amalgamation of the two. The attack made in the declaratory judgment action upon the finding previously made by the probate court was collateral and ineffectual unless the probate court was without jurisdiction. (See *Clevenger v. Figley,* 68 Kan. 699, 75 Pac. 1001.) Before giving the question of jurisdiction consideration, it may be advisable to note that even an erroneous judgment may become a finality. (See *Hoover v. Roberts,* 146 Kan. 785, 74 P. 2d 152; and *In re Estate of Bourke,* 159 Kan. 553, 156 P. 2d 501, and cases cited therein at page 559.) It is also well settled that decisions rendered within the jurisdiction of the probate court are as conclusive as judgments rendered by the district court (*Parsons v. McCabe,* 127 Kan. 847, 275 Pac. 173, and *Ward v. Krhounek,* 151 Kan. 414, 99 P. 2d 800), and that they cannot be collaterally attacked in a subsequent proceeding. (*Cole v. Thacker,* 158 Kan. 242, 146 P. 2d 665.) Jurisdiction does not depend upon the correctness of a judgment. (*Manley v. Park,* 62 Kan. 553, 562, 64 Pac. 28; *Eberhardt Lumber Co. v. Lecuyer,* 153 Kan. 386, 388, 110 P. 2d 757; *Thompson v. Terminal Shares,* 89 F. 2d 652; 21 C. J. S., Courts, § 27.) The foregoing may serve as sufficient to develop that the district court's ruling was erroneous if the probate court had jurisdiction to determine that the property was not a homestead. Did the probate court have such jurisdiction?

The legislature, in passing G. S. 1945 Supp. 59-1808, vested in the probate court authority to determine whether involved property was a homestead. For clarity and expediency, the statute is repeated:

"The guardian of the estate of a spouse may, *with or without notice,* upon

order of the probate court, sell, convey, lease, or mortgage, any real estate, *except the homestead,* the title to which is in the other spouse; . . ." (Emphasis supplied.)

The foregoing is the only statute we have which pertains, with particularity, to the alienation of the inchoate interest of an insane spouse. The interest of a spouse in a homestead may differ from an inchoate interest in other property but the distinction is not significant in this case. Though it is elementary, nevertheless it should be noted that an interest even in a homestead may arise and exist only by reason of a marriage relationship with the owner of the property. No instrument is needed to create it and it does not descend to heirs. (See *Jenness v. Cutler,* 12 Kan. 500, 516.) Consequently, it may follow that the legislature deliberately intended to place such an interest in a different category or classification than interests otherwise acquired in real property. It may be observed that under the wording of the statute the inchoate interest of an insane spouse may be mortgaged, leased or sold, if the property is not a homestead, by the guardian of an insane spouse, without notice and the statute does not require the appointment of a guardian *ad litem.* It should be noted further that under the wording of the statute the probate court can determine whether the property is a homestead also with or without notice and that no statute specifically requires the appointment of a guardian *ad litem* in instances wherein the insane spouse possibly may have a homestead interest in the involved property. It is equally obvious that unless the involved property is found to be a homestead by the court vested with authority to make such determination, the constitutional prohibition against the alienation of a homestead has no application whatever.

The act of the legislature which vests the probate court with authority to make such determination has constitutional sanction. Section 8, article 3 of the constitution provides that "There shall be a probate court in each county, which shall be a court of record, and have such probate jurisdiction and care of estates of deceased persons, minors, and persons of unsound minds, as may be prescribed by law, . . ." Thus, the constitution provides that probate courts shall have jurisdiction and care of the estates of persons of unsound mind, which estates include, of course, the interest of an insane spouse in and to a possible homestead. Therefore, we have in the present case an instance wherein a probate court, vested with consti-

tutional and statutory authority, made an essential finding that the property was not a homestead.

Was it necessary for the probate court to give notice to the insane spouse or to appoint a guardian *ad litem* for him? As hereinbefore developed, the applicable statute does not make any such requirements. No statute prohibits the husband or wife from being the guardian of an insane spouse. And there is no proper presumption that the marriage relationship casts a shadow of impropriety or an insinuation of adverse interests when such a guardian institutes court proceedings for the purpose of determining whether property is the homestead and for obtaining authority to sell property in which the insane spouse has an interest. In the present case a legally-appointed guardian, having statutory authority, filed a proceeding in the proper court for a proper determination, and all statutory requirements were complied with. Surely, a court should hesitate to hold in such circumstances that the suspicion or the possibility of adverse interests would defeat jurisdiction. But perhaps decision should not turn upon the guardian's good faith because it is possible to conjecture a case in which the guardian might be contemplating action which would be adverse to the best interests of the insane spouse and the jurisdictional question would be the same. It should be noted, however, that we do not have before us a case in which the incompetent's interests were considered by the court without notice *and without* the incompetent being represented in the court by one having statutory authority to do so. Insofar as the question of jurisdiction is concerned, when the plaintiff filed the action in the probate court as guardian of her incompetent husband, the incompetent was represented in court to the same extent as if the guardian had not been related to the incompetent husband in any manner. If this court would read into the statute a requirement that a legal guardian cannot file in the probate court a petition for the purpose of obtaining authority to sell the inchoate interest of the incompetent, the court would be passing legislation contrary to that which the legislature has seen fit to enact. Is it not equally correct to say that the legislature only can require a guardian *ad litem* must be appointed when the legal guardian is the spouse of the incompetent and homestead interests possibly are involved? Not only is there an absence of any legislation requiring a guardian *ad litem* to be appointed in such circumstances, but the legislature has specifically provided that the necessity for the appointment of such a

guardian shall be left for determination to the discretion of the probate court. G. S. 1945 Supp. 59-2205, reads:

"The petition of a person under legal disability shall be by his guardian or next friend. When it is by his next friend the court may substitute the guardian, or any person, as the next friend. The court *may* appoint a guardian *ad litem* in any probate proceeding to represent and defend a party thereto under legal disability." (Emphasis supplied.)

It may be noted again that there is no limitation placed upon the application of the last-cited statute when the petition seeks authority to sell an interest in a possible homestead. It follows, therefore, that insofar as the applicable statutes and the constitutional provisions are concerned, the question to be decided was before a tribunal having jurisdiction of the subject matter and of the rights of the incompetent because his legally appointed guardian had invoked the jurisdiction of the proper court for a determination of a proper question. In such circumstances, the best interests of the incompetent became the concern of the court. See the extended consideration of this subject in *Lockridge v. Glace,* 158 Kan. 431, 147 P. 2d 726, the fourth syllabus of which reads as follows:

"It is not the consent of the guardian to the sale of his ward's real estate, but the judgment or decree of the probate court, charged by law with the management, supervision and care of the person and property of its wards, that is binding upon a ward."

In the Lockridge case, *supra,* there was no guardian *ad litem* appointed and the involved property was a homestead. See, also *Starke v. Starke,* 155 Kan. 331, 125 P. 2d 738, and particularly the dissenting opinion by Mr. Justice Hoch in which the right and duty of the probate court to protect the interests of incompetents in homesteads is considered at length. I concede that *Lockridge v. Glace,* supra, and *Starke v. Starke,* supra, are not analogous in all respects to the present case but they support the assertion that there is no constitutional or statutory necessity for the appointment of a guardian *ad litem* in order to give the probate court jurisdiction because the rights of incompetents are the concern of the court. And such theory may well account for the absence of any statutes requiring the appointment of a guardian *ad litem* when the inchoate-in-character interest of an insane spouse in a possible homestead is involved. The presumption is that courts will act prudently and properly. The legislature has been content to leave the

question of the necessity for the appointment of a guardian *ad litem* to the discretion of the probate court, and there is no necessity for this court in this case to inject into the probate procedure any requirement which the legislature has not seen fit to make. Incidentally, it may be noted that the legislature has not seen fit to require the appointment of a guardian *ad litem* not only in connection with G. S. 1945 Supp. 59-1808, *supra*, and G. S. 1945 Supp. 59-2205, *supra*, but has left the question of the advisability of the appointment of a guardian *ad litem* to the discretion of the probate court in G. S. 1945 Supp. 59-2254, which pertains to a minor's interest in trust accountings, and under the provisions of G. S. 1945 Supp. 59-2303 and 59-2304 whereby the probate court is granted power to sell, lease or mortgage all of the real estate described in the guardian's petition without the appointment of a guardian *ad litem* being required, even though in some instances notice to the ward is required. However, if the probate court did *not* have jurisdiction for the reasons set forth in the majority opinion and in the cited authorities supporting the same, then the probate court's conclusion was void and subject to collateral attack. Consequently, further consideration must be given to the majority opinion.

The majority opinion cites *Osment v. Trout*, 156 Kan. 120, 131 P. 2d 640. Without detailing the facts in such case, it is sufficient to note that the order which authorized the payment of improper expenses from the minor's estate ultimately was appealed from by a guardian *ad litem*. The cited case is not one of collateral attack. And there was also a failure in such case to comply with certain mandatory statutes. The opinion in the case sets forth that the failure of the probate court to appoint a guardian *ad litem* in the circumstances was an abuse of discretion. But an abuse of discretion is a trial irregularity which may render a judgment voidable but not void and therefore not subject to collateral attack. (See *Moffett v. Robbins*, 81 F. 2d 431, certiorari denied 56 S. Ct. 940, 298 U. S. 675, 80 L. Ed. 1397; *Bradford v. Larkin*, 57 Kan. 90, 45 Pac. 69; *Eberhardt Lumber Co. v. Lecuyer*, supra; and *Bitzer v. Smith*, 158 Kan. 83, 145 P. 2d 148.) As the majority opinion in the present case sets out, it was stated in the Osment case, *supra*, ". . . that an order made without notice and without appointment of a guardian *ad litem* . . . was not a final order . . . It is obvious that in such case there was no one to appeal." Original jurisdiction is not affected by the absence of a right of appeal. As was said by

Mr. Chief Justice White in *Ex parte Abdu,* 247 U. S. 27, 62 L. Ed. 966, 38 S. Ct. 447:

"The error results from disregarding the broad distinction which exists between the right to be heard in courts of justice, on the one hand, and the necessity for the granting of authority, on the other, to review the results of such hearing by proceedings in error or appeal. [citing cases.]" (p. 30.)

See, also, 2 Am. Jur., Appeal and Error, § 6. Insofar as jurisdiction is concerned, there is no constitutional prohibition against vesting the probate courts with sole jurisdiction to determine whether the rights of incompetents in real estate are in a homestead. For the purpose of establishing jurisdiction, it is sufficient if a court of justice vested with statutory and constitutional authority makes a judicial determination of a litigant's rights. As hereinbefore set forth, the constitution of Kansas vests in the probate courts jurisdiction and care of the estates of persons of unsound minds and such jurisdiction is not lost because in some instances there may be no one to appeal from the exercise of it. For the reasons given, it may be respectfully asserted that the Osment case, *supra,* is not controlling on the question of jurisdiction. Neither are the cases of *Paronto v. Armstrong,* 161 Kan. 720, 171 P. 2d 299, and *In re Estate of Schroeder,* 158 Kan. 783, 150 P. 2d 173, which are cited in the majority opinion. In both of the last-cited cases the interested parties not only were not given any notice but they were not represented by any one having statutory authority to represent them. But in the present case the incompetent person was represented in court by his legally appointed guardian. Surely, it must be said that such representation was sufficient to invoke the jurisdiction of the court; otherwise the court would not have had jurisdiction even to appoint a guardian *ad litem* in the exercise of the court's discretion. And such jurisdiction was not lost by a failure to appoint a guardian *ad litem* because neither the constitution nor the statutes make such a requirement. There was no necessity for the incompetent husband being given notice in order for the court to have jurisdiction. The statute does not require it and no inquiry was being made as to the mental capacity of the plaintiff's husband. His incapacity had been previously determined.

The majority opinion states that the case of *Magnolia Petroleum Co. v. Moyle,* 162 Kan. 133, 175 P. 2d 133, is analogous. Such case involves the limited jurisdiction of a court under tax statutes which must be strictly construed in favor of taxpayers. In such cases the

sovereign duty of the state is involved. It is held essential to fair dealing between a sovereign and its citizens that the state shall not deprive a citizen of property because of delinquent taxes if, in fact, no delinquent taxes exist against the property. The doctrine is a well-recognized exception to the general rule prohibiting collateral attacks. The doctrine ordinarily should not be extended to cases wherein the duty of the sovereign to protect the interests of its citizens against its own acts of oppression is not involved. It should not be held that the instant case comes within such an exception to the general rule. The present case comes clearly within the rule set forth in the case of *In re Wallace,* 75 Kan. 432, 89 Pac. 687, the first syllabus of which reads:

"Where the jurisdiction of the court depends upon a fact which the court is required to ascertain and decide its judgment. determining that the fact does exist is conclusive evidence of jurisdiction until set aside or reversed by a direct proceeding."

See, also, the cases which have followed such case as shown by Shepard's citator.

In holding that the failure to appoint a guardian *ad litem* in the circumstances of the present case deprived the probate court of jurisdiction, this court is holding contrary to the weight of authority upon the question. In 27 Am. Jur. 842, § 121, Infants, the rule will be found stated as follows:

"While the appointment of a guardian *ad litem* for an infant defendant is not jurisdictional in the sense that failure to make such appointment deprives the court of power to act and renders such judgment void, a judgment rendered against an infant in an action in which he was not represented by a guardian *ad litem* or a general guardian is erroneous, and can be overthrown by writ of error *coram nobis,* or by motion in the same court, or by proper appellate proceedings, . . ."

The general principles incident to jurisdiction in this case will be found stated in almost any standard text. Even though it may be conceded that it would have been much better practice for the probate court to have appointed a guardian *ad litem,* nevertheless, the failure to do so when the incompetent spouse was represented in court by a legal guardian would not result in a lack of jurisdiction. From 44 C. J. S. 325, § 151, Insane Persons, the following is quoted:

"Although it has been held that the want of proper representation of an insane defendant is a jurisdictional defect, which renders the judgment void, ordinarily such want of representation does not render the judgment absolutely void, but merely voidable."

See, also, 43 C. J. S. 279, § 108, which reads:

"A guardian *ad litem* need not be appointed in a probate court, if the statutes instituting and regulating the practice in such courts do not require such appointment,"

and

". . . the weight of authority is to the effect that, where the court has otherwise jurisdiction, a judgment or decree rendered against an infant without the appointment of a guardian *ad litem,* while it may be erroneous, and subject to be reversed or set aside or to be ground for a new trial, at most is only voidable, but not absolutely void; . . . It remains in full force and effect until it is reversed on appeal or error or set aside by direct proceedings, and is not subject to collateral attack; . . ."

The rule is the same whether the incompetent person be an infant or otherwise incompetent. Moreover, in Kansas a rule prevails which is stated in *Seaverns v. Taylor,* 133 Kan. 268, 299 Pac. 931, as follows:

". . . If there is doubt as to the jurisdiction of a court of general jurisdiction with reference to a judgment rendered by it, the presumption is always in favor of its jurisdiction (*Bank v. Security Co.,* 65 Kan. 642, 70 Pac. 646), and the same rule extends to the judgments of the probate court (*Watkins v. Mullen,* 62 Kan. 1, 61 Pac. 385)." (p. 272.)

In the present case the majority decision permits a total stranger to the probate proceedings, who had no preëxisting, independent and conflicting right, to make a collateral attack upon a judgment which was not unjust as against him. The law in Kansas has not sanctioned such attacks since 1874 when Mr. Justice Valentine wrote the opinion in *Simpson v. Kimberlin,* 12 Kan. 579.

As hereinbefore indicated, the fact that the legislature has seen fit to require a guardian *ad litem* to be appointed in proceedings instituted pursuant to G. S. 1945 Supp. 59-2317, which was passed subsequent to the adoption of the constitutional amendment, does not establish that the legislature intended to extend the application of such statute so that guardians *ad litem* must be appointed when the interest sought to be disposed of is only the semi-inchoate interest of an insane spouse in a possible homestead. If the legislature was of the opinion that it was necessary to appoint a guardian *ad litem* in such instances, it could have amended G. S. 1945 Supp. 59-1808 at the same time it passed G. S. 1945 Supp. 59-2317, but it did not see fit to do so.

The instant case presents a clear example of the advisability of the rule which restrains courts from invading the legislature's

domain. If wisdom directs that a guardian *ad litem* should be appointed for an insane spouse when the partly inchoate interest of such spouse in a possible homestead may be sold, the legislature should say so, not the courts. If the legislature sees fit to enact such a requirement, the legislation, in all probability, will not be retroactive and will not affect the titles to property acquired prior to its enactment. But when this court reads into the statute such a requirement, many titles dependent upon sales previously made by guardians in comformity with existing statutes may become subject to collateral controversies in the courts.

The ruling of the district court should be reversed.

WEDELL and HOCH, JJ., concur in the foregoing dissenting opinion.