No. 34,951

E. A. SHENEMAN, Guardian of the Estate of Antone Dautschmann, An Incompetent, *Appellant*, v. SUSIE MANRING, *Appellee;* EARL KNIGHT and GEORGE TEMPLAR, *Claimants.*

(107 P. 2d 741)

Opinion filed December 7, 1940.

*Harold W. Herrick* and *Olin B. Scott,* both of Winfield, for the appellant.
*Earl M. Knight* and *George Templar,* both of Arkansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment of the district court sustaining an order of the probate court which directed the guardian of an incompetent father to contribute to the support of the incompetent's indigent daughter.

The guardian hesitates to contribute to the daughter's need until this court has added its sanction to those of the probate and district courts which have held that this should be done.

The pertinent facts are not in dispute. It appears that on November 14, 1939, one Antone Dautschmann, eighty-eight years

of age and blind, was adjudged incompetent, and a few days thereafter the appellant was appointed and qualified as guardian of his estate. Dautschmann is a widower, residing in his own home under the care of a housekeeper. Of his five children all are now dead except one daughter, Mrs. Susie Manring, his sole heir at law. She is forty-seven years of age, in ill-health and poverty-stricken, and being supported by local public relief agencies.

At the time Dautschmann was adjudged incompetent his estate was worth about $30,000. Since then a son of his has died intestate and without issue, leaving an estate of about $15,000 which under the statute of descents augmented his incompetent father's estate to about $45,000.

The guardian testified that Dautschmann's income is about $1,880 to $2,000 per annum, his personal and household expenses about $600 to $720, his annual real and personal taxes about $416.91, and that the premium on the guardian's bond is $225 per annum.

The order of the probate court affirmed by the district court directed the guardian to contribute $50 per month to the indigent daughter until the further order of the court. From the financial figures given above it will be seen that the father's annual income is quite sufficient to permit compliance with the court's order without impairment of the principal of his estate.

It was stipulated that since the year 1934, Dautschmann (who was then eighty-three years of age and the daughter then forty-two years of age) has refused to permit his daughter to live in his home and has refused to contribute to her support. What their personal attitude was towards each other, and what, if any, was her need of financial assistance prior to 1934 was not shown.

On behalf of the appellant guardian it is argued that at common law there is no duty on the part of a father to contribute to the support of an adult indigent daughter who is not a member of his household. Quite true, but many years ago this state, by constitutional mandate and by statutory enactments, began to forsake the hard rules of the common law governing domestic relations and to substitute the more humane rules of the civil law in respect to such matters—the personal and property relations of husband and wife, of parent and child, and the transfer or devolution of their property. Consider also the statute of 1907 (G. S. 1935, 39-233), which in lunacy cases declared that parents are liable for the support of their

incompetent children and that children are liable for the support of their incompetent parents. And see the well-considered opinions on this subject written by the late Mr. Justice Porter in *State v. Bryan*, 105 Kan. 483, 185 Pac. 25, and *State v. Bateman*, 110 Kan. 546, 204 Pac. 682. In that latter case it was said:

"Under section 33 of the act which reads: 'The following relatives shall be bound by law to provide for and support the persons referred to in sections 31 and 32 of this act: The husband for the wife and the wife for the husband, the parent for his or her children, and the children for their parents,' it is held that the state may maintain an action against the father of an insane son who has been committed to the state hospital, to recover the per capita cost of his maintenance and care, after the son has reached the age of twenty-one years.

"The statute is an innovation on the common-law liability of relatives, and recognizes the moral obligation resting upon the parent to provide for an adult insane child, and makes that imperfect obligation a legal one." (Syl. ¶¶ 4, 5.)

The new probate code has something to say on the question at issue. After defining an incompetent person to include an insane, a lunatic, or distracted person incapable of managing his person or estate (G. S. 1939 Supp., 59-1801), it provides for the appointment of a guardian for the person or property of such person, and in G. S. 1939 Supp., 59-1804, certain powers and duties are conferred on the guardian (subject to the control and direction of the court), including that of paying "reasonable charges" incurred for the support and maintenance of the children of his ward. It could be argued that "children" as there referred to means "minor children," but earlier in the same section of the statute the subject of "the support, maintenance, and education of their minor children" is dealt with separately. And since the guardian is only permitted to pay reasonable charges out of his ward's estate and is "subject to the control and direction of the court at all times and in all things," it is not easy to lay hold of a rule of statutory construction or of precedent which would permit this court to declare dogmatically that the statute does not contemplate the need of adult children for support out of their incompetent parents' estate under any circumstances.

The state constitution provides that the probate court shall have the care of persons of unsound mind, as may be prescribed by law (Art. III, § 8), and the new probate code declares that the probate court shall have and exercise such equitable powers as may be necessary and proper to fully hear and determine any matter properly before it. (G. S. 1939 Supp., 59-301.) In 1 Bartlett's Probate Law and Practice, 82, it is said:

"The legislature authorized the probate court to appoint a guardian for the estate of a person incapable of managing his estate because of unsoundness of mind. The probate court has full power to control the guardian of such person in the management of the person and estate and the settlement of his accounts. The court is a court of general jurisdiction with respect to the subjects committed to it, and manifestly one of those subjects is the management of the estate of an insane person. . . . The law evidences an intent to impose a broad power in the guardian, subject to the supervision of the probate court."

Counsel for the guardian stress the fact that five years before the father was adjudged incompetent he refused to support his daughter and refused to have her in his home. That bare fact without explanatory circumstances is not very important. Five years ago the father was eighty-three years old and mayhap the infirmities of age, both mental and physical, may even then have begun to weigh on him. Five years ago mayhap his daughter's ill-health and indigence were not so serious as when she made her application to the probate court for a modest allowance out of her incompetent father's estate. Moreover, the proper attitude for the guardian, we think, is to assume as nearly as possible what the father would do if he were in good mental and physical health, with full comprehension of his daughter's need in 1939 after his own estate had been enhanced by the windfall of the $15,000 estate of his needy daughter's last surviving brother. We can give no countenance to the suggestion that if the father had a personal hostility to his daughter in 1934, it would be the duty of the guardian to continue that hostility towards her in 1939. What a normal father ought to do and probably would do under the circumstances is the proper attitude for the father's guardian to take when the infirmities of age will not permit the father to act for himself.

Looking into the textbooks and decided cases in other jurisdictions, there is no scarcity of authority on this general subject. In the notable case of *Matter of Flagler*, 248 N. Y. 415, 162 N. E. 471, 59 A. L. R. 649, and annotation, Mrs. Ida A. Flagler was a widow, seventy-eight years of age, and incurably insane. She had no descendants. Her estate was valued at more than $11,000,000, and her annual income at about $500,000. The most liberal provision for her own comfort did not call for more than a fraction of her income. One of her kinswomen, a second cousin, Mrs. Martha M. Mohr, was in ill-health and her husband was out of work. Misfortunes of various sorts had reduced them to destitution. She applied for an allowance out of her insane cousin's estate. A referee of the county

court recommended the payment of a yearly allowance to the indigent petitioner. The order was made accordingly; the matter was taken to the appellate division, which modified and affirmed the order of the county court; and the cause eventually came to the court of appeals. In broad lines the judgments of the lower courts were affirmed and also contained an order directing that a fee be paid to the attorney for Mrs. Flagler's impoverished kinswoman for his services in the premises.

In *In re DeNisson*, 197 Wash. 265, 84 P. 2d 1024, the superior court settled and approved the account of the guardian of an insane wife's estate. The account contained items of a monthly allowance paid out of that estate in behalf of her "penniless and destitute" husband, to whom the wife had been three times married and twice divorced. They did not reside together. The supreme court upheld the power of the superior court to approve the account. In the course of the opinion it was said:

"The extent of the court's power in such matter is strikingly illustrated by a number of cases that have come to our attention. *Potter v. Berry*, 53 N. J. Eq. 151, 32 Atl. 259, 51 Am. St. 626, 34 L. R. A. 297; *In re Johnson*, 111 N. J. Eq. 268, 162 Atl. 96; *Farwell v. Commissioner of Internal Revenue*, 38 F. 2d 791 (C. C. A., 2d); and others collected in 59 A. L. R. 653, 34 L. R. A. 297, and 32 Law Notes 128. It appears from those cases that courts of equity, both in England and in this country, have on occasion made an allowance out of an incompetent person's estate for the support and maintenance of persons whom the incompetent has no legal, or even moral, duty to support." (p. 275.)

The textbook doctrine is well stated in 25 Am. Jur. 52, thus:

"The family of an insane person ordinarily is entitled to support and maintenance from his estate. In a proper case, therefore, the court may authorize an allowance from the funds of an incompetent ward for the support and maintenance of the latter's husband or wife, children, or parents. Also, a court of equity has power out of the surplus income of the estate of an insane person to provide for the support of persons whom the insane person is not under legal obligation to support, where it specifically appears that the insane person himself would have provided for such support had he been sane. The court in making such allowances acts for the insane person as it supposes he himself would have acted if he had been of sound mind, and the amount and proportion of allowances thus made rest entirely within the discretion of the court."

In the case at bar the trial court allowed an attorney's fee for legal services in behalf of the indigent petitioner. The amount of the fee is not contested, but only its legality. We think it was allowable under analogous precedents. (*Singer v. Taylor*, 91 Kan. 190,

137 Pac. 931; *Chapman v. Kennett,* 94 Kan. 535, 146 Pac. 1153; *Matter of Flagler,* supra; *Reynolds v. Reynolds,* 208 N. C. 254, 180 S. E. 70.)

The judgment is affirmed.