No. 36,137

In the Matter of the Estate of Mabel Lilly Younkin, an Insane Person. (R. M. LOCKRIDGE, Guardian of the Estate of Mabel Lilly Younkin, *Appellant,* v. ROY GLACE, *Appellee.*)

(147 P. 2d 726)

Opinion filed April 8, 1944.

*Wayne W. Ryan,* of Clay Center, argued the cause for the appellant.

*W. M. Beall,* of Clay Center, argued the cause for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This appeal arises out of the petition of a guardian of an incompetent widow to sell her interest in the homestead, she being the sole owner thereof. There were no children.

A demurrer to the guardian's petition by Roy Glace, a prospective purchaser of the ward's interest, was sustained in the probate court

and the district court on the ground the sale would violate the homestead provisions of our state constitution. The appeal by the guardian is from that ruling.

The material portions of the guardian's verified petition to sell the real estate were, in substance, as follows:

R. M. Lockridge, petitioner, is the duly appointed, authorized and acting guardian of the person and estate of Mabel Lilly Younkin, an insane person; Robert B. Younkin, the same person as Robert Younkin, had been the owner of the farming lands described in the petition; he and his wife, Mabel Lilly Younkin, occupied the land as their homestead prior to his wife's insanity; by their joint consent they executed and delivered a first and second mortgage on the homestead to separate corporations; the husband died intestate; there were no children and the wife was her husband's sole heir at law; she continued to occupy the homestead until she was adjudged insane and committed to the state hospital where she now remains, without prospect of recovery; the second mortgage was foreclosed and the homestead was sold subject to the first mortgage; the sale was confirmed and the period of redemption will expire April 13, 1944; there are no funds in the estate of the insane widow with which to make redemption; the homestead is worth more than the total mortgage indebtedness and taxes against it; the guardian has an offer of $7,500 for the land from one Roy Glace, which is the fair and reasonable market value thereof, provided the prospective purchaser can obtain good title by guardian's deed; the offer is the highest bid that can be obtained and is more than three-fourths of its appraised value; if the offer is accepted the homestead may be redeemed with a saving to the estate of the ward of more than $550; the sale would be and is to the best interests of the ward's estate; if it cannot be made the ward will lose all right, title and interest in and to her homestead.

The homestead provision of our constitution (art. 15, § 9) concerning farming land, reads:

"A homestead to the extent of one hundred and sixty acres of farming land . . occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from *forced sale* under any process of law, and shall not be alienated without the *joint consent* of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon: *Provided,* The provisions of this section shall not apply to any process of law

obtained by virtue of a lien given by the consent of both husband and wife."
(Emphasis supplied.)

Our homestead exemption statutes conform with the constitutional provision. (G. S. 1935, 60-3501; G. S. 1943 Supp. 59-401.)

Is the constitution a barrier to the sale of the incompetent widow's interest in the homestead under the facts conceded by the demurrer, if the sale is approved by the probate court? We do not think it is. In the first place the sale now sought by the guardian is not a forced sale of the ward's interest. If the widow were sane, she could, of course, under the facts in this case, sell her homestead or any interest therein. It was determined long ago that in legal contemplation this is a petition for the sale of the homestead by the incompetent widow through her guardian, as the law requires. (*Guy v. Hansow,* 86 Kan. 933, 936, 122 Pac. 879.) This phase of the subject will receive further attention presently.

In the second place it is conceded the mortgages on the homestead were valid encumbrances placed thereon by the joint consent of husband and wife. The homestead provision of the constitution authorizes such encumbrances. One of the liens created by such joint consent has been foreclosed and the homestead has been sold pursuant to law, subject to the first mortgage. The only interest in the homestead now remaining is the right to redeem. That right vests entirely in one person, the incompetent widow. Manifestly in this case the sale of her interest no longer requires the joint consent of husband and wife. The joint consent provision, as expressly provided by the constitution, is a requirement only when the relation of husband and wife exists. Here that relation no longer exists and clearly the joint consent provision of the constitution is not applicable.

The next inquiry is, does the probate court have jurisdiction over the parties and the subject matter involved? Touching the jurisdiction of probate courts, article 3, section 8 of our constitution provides:

"There shall be a probate court in each county, which shall be a court of record, and have such probate jurisdiction and care of estates of deceased persons, minors, and persons of unsound minds, *as may be prescribed by law* . . ." (Emphasis supplied.)

It will be observed the above constitutional provision does not deny jurisdiction in the premises to the probate court. Under that provision the probate court has such jurisdiction over the care of

persons of unsound mind, as may be prescribed by law. (*Sheneman v. Manring,* 152 Kan. 780, 782, 107 P. 2d 741.) What jurisdiction and powers does the law prescribe for probate courts insofar as here material?

G. S. 1943 Supp. 59-301 provides:

"The probate courts shall be courts of record, and, within their respective counties, shall have original jurisdiction:

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"(6) To appoint and remove guardians for minors and incompetent persons, to make all necessary orders relating to their estates, to direct and control the official acts of such guardians, and to settle their accounts.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"(11) Such other jurisdiction as may be given them by statutes pertaining to particular subjects.

"(12) And they shall have and exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts."

In the Sheneman case, *supra,* we held the probate court had jurisdiction and power to compel the guardian of an incompetent father to contribute to the support of his incompetent, indigent daughter. In that case we quoted with approval from 1 Bartlett's Probate Law and Practice, 82, with respect to the powers of the probate court, as follows:

"The legislature authorized the probate court to appoint a guardian for the estate of a person incapable of managing his estate because of unsoundness of mind. The probate court has full power to control the guardian of such person in the management of the person and estate and the settlement of his accounts. The court is a court of general jurisdiction with respect to the subjects committed to it, and manifestly one of those subjects is the management of the estate of an insane person. . . . The law evidences an intent to impose a broad power in the guardian, subject to the supervision of the probate court."

G. S. 1943 Supp. 59-1804, pertaining to the duties of a guardian, provides:

"A guardian shall be subject to the control and direction of the court at all times and in all things. A guardian of the person shall have charge of the person of the ward. A guardian of the estate shall (1) prosecute and defend for his ward; (2) *sell assets* of the estate *when the interests of the ward and his estate require the sale thereof;* . . ." (Emphasis supplied.)

G. S. 1943 Supp. 59-1806, pertaining to the guardian's right to lease the land of his ward for a limited period, reads:

"A guardian of the estate may, subject to the approval of the court, *lease* for three years or less the possession or use of *any real estate* of his ward

*whenever it appears to be for the best interests of the ward and his estate."* (Emphasis supplied.)

G. S. 1943 Supp. 59-1807, pertaining to the guardian's right to *sell, lease* or *mortgage* real estate of the ward, provides:

"A guardian of the estate may, pursuant to article 23, *sell,* lease for more than three years, or for oil and gas or other minerals, or mortgage *any real estate* of a ward *subject thereto* to provide for the support, maintenance, and education of the ward, his spouse and children, or whenever the personal property is insufficient to pay his debts and other demands against the estate, *or whenever it shall be determined by the court* that such *sale, lease,* or *mortgage is for the best interests of the ward and his estate."* (Emphasis supplied.)

There is another statute which pertains to a sale, lease or mortgage of real estate by a guardian, but it applies to a situation where both spouses are involved and hence is not applicable here. (G. S. 1943 Supp. 59-1808.)

It will be observed that in the pertinent statutes the legislative grant of power and authority to the guardian, subject to the supervision of the probate court, is in nowise limited or restricted to any particular kind or character of real estate which the ward may own or in which he may have a particular kind or type of interest. The guardian's powers and duties are made broad and general and are subject only to the supervision of the probate court. They apply to all of the ward's property. No exception is made with respect to the sale, lease or mortgage of property which constitutes the ward's homestead. G. S. 1943 Supp. 59-1807 expressly embraces *any* real estate *subject to* sale, lease or mortgage. Manifestly a homestead constitutes real estate, which like any other real estate, is subject to sale, lease or mortgage by the owner. As already indicated the homestead may be conveyed by a sane widow in whom absolute title vests and she may convey it, or any interest therein, free from all claims of creditors except those who have a valid lien thereon. (*In re Estate of Casey,* 156 Kan. 590, 596, 134 P. 2d 665.) G. S. 1943 Supp. 59-1807 provides the guardian of the estate may sell *any real estate of an incompetent* whenever it shall be determined by the court that such sale is for the best interests of the ward and his estate. It is therefore clear a guardians' sale always remains subject to the consent and approval of the probate court. In the final analysis the sale is therefore passed upon and in reality is a sale by the court, the deed being executed by the guardian of the ward, his legally appointed representative.

In the instant case it is conceded the guardian's sale would be to the best interests of the ward. Failure to make the sale inevitably will result in complete loss of the ward's remaining right and interest in the homestead. On the other hand, a sale will enable her guardian to salvage at least $550 for her estate.

Appellee contends the *consent* of the remaining spouse to the alienation of any interest in the homestead must be freely, voluntarily and knowingly given. Manifestly such consent cannot be given by an insane person for any purpose. Appellee further argues the probate court can never substitute its consent for that of an incompetent person where the homestead is involved. If that be true the court is powerless to protect the best interests of this ward.

Whatever merit appellee's contentions may have under a different factual situation, we think they cannot be sustained in the instant case. Here only one person, the insane widow, is involved. An insane person, of course, can never give a valid personal consent to the alienation of his property, whether the property be his homestead or of any other character. It is not the character or type of property involved that determines the mental condition of a ward. It is by reason of his mental incapacity to act for himself that a guardian is appointed to act for him and to protect his estate, whatever the nature or character of the property belonging thereto might be. The consent of a guardian to alienate his ward's property, under sanction and approval of the probate court, constitutes a legally substituted consent where the property is not his homestead just as definitely as where the property is his homestead. Appellee concedes the validity of the substituted consent where the property alienated is not the homestead, but denies its validity where the property is the homestead. The logic of the contention is not sound, and in the absence of a legislative intent to support the contention we would not be justified in sustaining it. The legislative intent, as applied to the facts in the instant case, appears to be contrary to appellee's contention.

We have previously indicated the reasons which compel the conclusion that there is no constitutional barrier to a guardian's sale in this case. We also have indicated what we believe to be the legislative intent as applied to the particular facts here presented. In so doing we have not overlooked the language of G. S. 1943 Supp. 59-1807, which provides for the sale, lease or mortgage of any real

estate *subject thereto*, when the specified conditions exist. That the interests of wards in lands generally are subject to management by a guardian under the direction of the probate court was well established long prior to the adoption of the new probate code. In *Charles v. Witt*, 88 Kan. 484, 129 Pac. 140, it was held:

"Guardians are required to manage the interests of their wards under the direction of the probate court (Gen. Stat. 1909, § 3975), and may lease the lands of the wards or loan their money, but can do so lawfully only under the direction of the court." (Syl. ¶ 5.)

In *Smith v. Landis*, 93 Kan. 453, 144 Pac. 998, the guardian of an insane widow and minor children executed a lease upon the homestead. The power of the guardian to execute such a lease, however, was not raised, but in that case and in the Charles case the lease on the property was not obtained by the free and voluntary consent of the wards. It was obtained by a substituted consent.

In *Guy v. Hansow*, 86 Kan. 933, 122 Pac. 879, the court had before it an action for the specific performance of a contract of a guardian to sell a homestead in which minors had an interest. The defense was that a guardian's deed executed pursuant to the guardian's contract would be neither good nor marketable. This court held otherwise. It said:

"The minors had an interest in the land which was property, and *any property of a minor or any interest in any kind of property, real or personal, may be sold whenever circumstances make it beneficial to the minor* that it should be sold. (Gen. Stat. 1909, § 3991.)

"In 22 Cyc. 568, it is said of statutes of this kind:

"'Under a statute authorizing *generally* the sale of real estate of infants, the court may order the sale of *any interests* of an infant in such estate, whatever may be the character of that interest, whether legal or equitable, vested or contingent, in common with others or separate, or in whatever manner it may be held, whether by descent, devise, or by contract.' (Emphasis supplied.)

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"'A naked right to redeem, however, may be valuable, and can be sold if the probate court should decide that a sale would be advantageous to the minors.'" (p. 935.)

In the same opinion it also was said:

"The contract of the guardian to sell the minors' interest was of course ineffectual, but the sale *authorized and approved by the probate court was binding upon them* and the defendant is to receive not only what he contracted for but all the interest the minors have in the land. The title which the defendant will receive is, therefore, perfectly good, and the only question is whether, notwithstanding its good character, it will be sufficiently free from judicious question to be marketable.

"The hesitation of purchasers to take titles of this character arises because the courts exact such right compliance with all the provisions of law governing the sale of property belonging to one not *sui juris*. All doubt of the validity and propriety of this sale, however, is removed by the decree of specific performance. *This decree was procured by the minors themselves. The suit was instituted by them by their guardian and next friend, as the law requires.* (Gen. Stat. 1909, § 3975; Civ. Code, § 30.) *They are the real parties in interest.* (22 Cyc. 630.) *Infancy is not a bar* to the commencement and prosecution of such suits as may be necessary and appropriate to protect and advance an infant's property and other rights. (22 Cyc. 628.)" (p. 936.) (Emphasis supplied.)

Touching the binding character of a court decree upon the minors, the same opinion states:

"On the authority of the English case, *Flight v. Bolland,* (Eng. Ch.) 4 Russ. 298, it is frequently said that specific performance can not be maintained on behalf of an infant because the remedy is not mutual. This, however, is not true when the sale is not that *of the infant alone but is one made through the intervention of a guardian duly authorized to bind him.* (*Guard v. Bradley,* 7 Ind. 600.) The court had power to dismiss the action in case it were not for the benefit of the infants (Civ. Code, § 30), and by proceeding to judgment must be held to have determined that the action was for the benefit of the infant plaintiffs. The petition set up the entire transaction and described fully and accurately the interest which the minors had to convey. The answer challenged ability to convey and made the specific defense that the title tendered was neither good nor marketable. The very issues, therefore, which the infants might raise on coming of age were presented to the court, with the burden resting on them to show that they were concluded by the sale. The court held that they were so concluded, and they are concluded." (p. 937.) (Emphasis supplied.)

We think the incompetent widow in the instant case would be concluded just as effectually by the guardian's sale, approved by the probate court, as the incompetent minors were in the Guy case.

We think the lawmakers intended to grant, and did grant, to the guardian power and authority, under the direction of the probate court, to sell any interest the ward might have in the homestead under the conceded facts in this case.

The cause is remanded with directions to overrule the demurrer to the petition.

HOCH, J. (concurring): I agree that the homestead provision of the state constitution relative to "joint consent" to alienation (art. 15, § 9) is not applicable to this case for the reason that no judicial relationship of husband and wife exists. But the position taken by

the lower court is readily understandable. It evidently considered itself bound by the construction of the word "consent" upon which our old cases dealing with the "joint consent" provision were plainly based. (See *Starke v. Starke*, 155 Kan. 331, 125 P. 2d 738.) If "consent" cannot be given by the probate court for an incompetent spouse, ward of the court, then the court is equally powerless to give such "consent" for and in behalf of an incompetent ward who has no living spouse. To hold otherwise would produce the anomalous and absurd result that if the incompetent ward has no spouse the court may give consent for and in behalf of the ward, after proper showing, but if the ward has a competent spouse who asks that the same action be taken in protection of his and the ward's interests the court is powerless to join the competent spouse in giving such "consent." The trial court was right in the view that as far as the power to give "consent" is concerned there is no basis for any distinction between the two classes of cases. But we have here reached the only sound view with reference to the power of a probate court to give "consent" for its incompetent ward. Without the authority to give consent for the ward, after proper showing, probate courts would be powerless in countless cases to discharge the duty imposed upon them of protecting and safeguarding the homestead and other property interests of their wards.

SMITH, J., joins in the foregoing concurring opinion.