No. 39,080

In the Matter of the Estate of Lucy Glass, Deceased. THE STATE DEPARTMENT OF SOCIAL WELFARE OF KANSAS, *Appellant,* v. COMMERCIAL NATIONAL BANK, Executor, *Appellee.*

(262 P. 2d 934)

Opinion filed November 7, 1953.

*Charles V. Hamm,* of Topeka, argued the cause, and *Harold R. Fatzer,* attorney general, *Paul E. Wilson,* assistant attorney general, and *Hart Workman,* of Topeka, were with him on the brief for the appellants.

*Marion C. Miller*, of Kansas City, Kansas, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

THIELE, J.: This appeal presents the question whether the claim of the state department of social welfare against a parent for the support of incompetent children committed to a state hospital survives the death of the parent and may be proved as a demand against the parent's estate. For convenience we shall refer hereafter to the parties as the petitioner and the executor.

Although not disclosed by the abstract of the record, we are advised by the executor in its brief that Lucy Glass was the mother of two adult children who were committed to the state hospital for the insane and that she died leaving a will in which she named appellee as executor and under which she made no bequests or devises to the incompetent children.

In March, 1952, the petitioner filed its petition in the probate court against the estate of Lucy Glass asserting a demand for $1,010.72 for the maintenance, care and treatment of Mamie Woodring and George Glass, incompetent daughter and son of Lucy Glass, deceased; that the incompetents were patients at the Osawatomie State Hospital as shown by two attached exhibits, one for the maintenance, care and treatment of Mamie Woodring in the amount of $537.36 for a period ending April 25, 1951, and the other for like services to George Glass in the amount of $472.86 for a period ending April 25, 1951. (It is here noted that as hereafter stated, Lucy Glass died on April 25, 1951.) It was also asserted in the petition that the petitioner had complied with the requirements of G. S. 1949, 59-2006 as amended. There being no issue thereon, the remainder of the petition is not noticed further.

The executor filed six objections to the allowance of the demand. Five of the objections, the contents of which are not shown, were overruled, but the sixth was sustained. That objection in substance stated that Lucy Glass died on April 25, 1951, and thereupon the petitioner's pretended cause of action abated, did not survive, had not been and could not be revived and could not be allowed against her estate and the court had no jurisdiction of the claim in any respect. The probate court sustained this objection, and on appeal to the district court by the petitioner, that court made a like ruling. In due time, the petitioner appealed to this court specifying the ruling as erroneous.

It is to be borne in mind that the petitioner asserts no claim that the estate of Lucy Glass is liable for any maintenance, care and treatment of her incompetent children furnished the children after her death. The sole question is the right of the petitioner to collect from her estate for the accrued and unpaid amount due at the date of her death.

To explore every avenue opening from a consideration of the broad question of the duty of a parent to support his child, would involve the writing of a treatise. Our effort will be to confine discussion as much as possible. We here note that both parties have referred to decisions and textbook authorities, which we do not mention below. They have been examined but those mentioned are deemed sufficient.

For the reason repeated references are made with respect to the liabilities of the parent for the support of his children and incompetent children at common law, we note that under G. S. 1949, 77-109 it is provided that:

"The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state . . ."

In *Clark v. Allaman*, 71 Kan. 206, 80 Pac. 571, 70 L. R. A. 971, may be found an exhaustive review of this statute and its history. The last case involved water rights. In the later case of *Cooper v. Seaverns*, 81 Kan. 267, 105 Pac. 509, 135 Am. St. Rep. 359, 25 L. R. A. n. s. 517, which was an action for slander, where the defendant sought to invoke the rule of common law that spoken words imputing unchastity to a female are not actionable without allegation and proof of special damages, this court held the rule was out of sympathy with the true spirit of the bill of rights, lacked the sanction of justice and right and did not apply to the conditions or meet the needs of the people of this state.

Textbooks treating the general subject of the duty of a parent to support his child make it clear that regardless of any statute, parents are under a duty to support their minor children (39 Am. Jur. p. 631, 67 C. J. S. p. 686); that in the absence of some legally sufficient reason the duty to support continues during the parents' lifetime and until the child reaches majority, unless the child is in such dependent condition physically or mentally as to be unable to support itself. (39 Am. Jur. p. 645, 67 C. J. S. 704.)

We need not review authorities dealing with the duty of a parent to support his minor child other than to note that in *Doughty v.*

*Engler,* 112 Kan. 583, 211 Pac. 619, 30 A. L. R. 1065, where it was said that at common law the father of an illegitimate child was under no legal duty to support it, it was held that the father of such a child too young to support itself was under a nonstatutory obligation to support it. In *Myers v. Anderson,* 145 Kan. 775, 67 P. 2d 542 the same question was again before the court and the last cited case was followed. It may be urged that the above cases dealt with minor children and that is true. On the other hand the decisions show clearly that a rule of the common law unsuited to the conditions and the needs of the people of this state will not be followed.

The question of the duty of a parent to support an adult child has been before this court on at least two occasions, which will be noticed. In *Sheneman v. Manring,* 152 Kan. 780, 107 P. 2d 741, it appeared that the father, who was a man of some means, lived alone with a housekeeper. His only surviving child was a daughter forty-seven years of age, in poor health and poverty stricken, being supported by public relief agencies. The father was declared incompetent and a guardian was appointed. The probate court ordered the guardian, out of the ward's estate, to make monthly contributions to the daughter. Reference is made to the opinion for a fuller statement of the facts. The guardian appealed to the district court which affirmed the probate court and appeal to this court followed. Limits of space preclude extensive quotation but we note the following:

"On behalf of the appellant guardian it is argued that at common law there is no duty on the part of a father to contribute to the support of an adult indigent daughter who is not a member of his household. Quite true, but many years ago this state, by constitutional mandate and by statutory enactments, began to forsake the hard rules of the common law governing domestic relations and to substitute the more humane rules of the civil law in respect to such matters — the personal and property relations of husband and wife, of parent and child, and the transfer or devolution of their property . . ."

This court held that under the statutory and equitable powers of the probate court, that court had authority to make the order.

In *Prosser v. Prosser,* 159 Kan. 651, 157 P. 2d 544, an incompetent adult, through her natural guardian and next friend commenced an action against her father in the district court alleging the facts concerning her incompetency and her need for support and maintenance. The father's demurrer to the petition was overruled and he appealed to this court where he urged he was not liable for plaintiff's support after she reached majority. After making some

review of cases growing out of divorce actions relied on by the father, it was said:

"It is clear, however, in making those statements the court was considering its authority under what is now G. S. 1935, 60-1511. This action was not brought under such a statute. It was brought to enforce the common law duty of a parent to provide for the support and maintenance of his children. It is a generally accepted rule that where a child on becoming of age is in such a feeble and dependent condition physically or mentally as to be unable to support himself the parental obligations and duties toward such a child remain unchanged. See 46 C. J. 1269, 39 Am. Jur. 645, 710."

Without further reviewing the opinion we note the holding of this court that:

"The duty of a parent to provide for his child where the child is so incompetent as to be unable to provide for himself does not cease when the child becomes of age."

A review of the above authorities leads to the conclusion that a parent has a common law duty to provide support and maintenance for his minor children and that such duty extends and remains unchanged to a child who, on becoming of age, is in such feeble and mental condition physically and mentally as to be unable to maintain and support itself.

In support of the trial court's ruling the executor states that the demand is based wholly upon G. S. 1949, 59-2006 as amended by Laws 1951, chapter 340, section 2, now G. S. 1951 Supp. 59-2006, and that neither act imposes liability on the estate of Lucy Glass. The petition for allowance does state that the petitioner has complied with the requirements of the statute, but its allegations do not exclude the nonstatutory duty of the parent to support her incompetent children. As is demonstrated by the cases mentioned above, and as we have concluded, there is a nonstatutory, as well as a statutory duty and we cannot agree that the demand is based solely on statutory grounds. Therefore we shall devote no space to a discussion that a cause of action created by statute does not survive unless the statute or some statute of general application so provides.

In further support of the trial court's ruling, the executor contends there is no common law liability that survives after the death of the parent and quotes from 39 Am. Jur. p. 647 that:

"By the rules of the common law, a father is under no obligation *to provide for the support of his children after his death;* his liability for their support is held to terminate with that event, and no claim therefor survives against his estate." (Emphasis supplied.)

Reference to the above text will show the subject of discussion is liability for support from the father's estate after his death, and not the liability of his estate for support of the child during his lifetime. The instant demand is not for support after the mother's death, but is one for support while she lived.

In *In re Estate of Colclazier*, 157 Kan. 125, 139 P. 2d 152, the state department of social welfare filed a petition in the probate court asserting a demand against a father's estate for the maintenance and support of his incompetent son at a state hospital. On appeal the district court allowed a part of the claim and denied the remainder for the reason that requisite statutory notices were not given. No question of survival of the cause of action was involved. The case, however, does contain some statutory history leading up to and some analysis of G. S. 1949, 59-2006 and reference is made thereto.

We need not review any reasons for the amendment of the statute in 1951 to make specific reference to the board of social welfare or to increase the amount of recovery, for generally speaking the two are alike in fixing liability. For our purposes we quote only that part of G. S. 1951 Supp., 59-2006 which specifies duty to support. It reads:

"The following shall be bound by law to support persons committed to or received as patients at the state hospitals, as that term is defined in subsection 3 of section 59-2001 of the General Statutes of 1949: Spouses, parents and children. Payment for the maintenance, care and treatment of any patient shall be paid quarterly *by said patient, by the guardian of his estate, or by any person bound by law to support him. The state department of social welfare may recover* the sum of twelve dollars ($12) per week as compensation for the maintenance, care and treatment of a patient in a state hospital *from such patient* when no legal disability exists, *from the estate of such person, or from any person bound by law to support such person* . . ." (Emphasis supplied.)

Insofar as a parent is concerned the statute restates the common law liability, goes further and fixes the amount and provides conditions precedent to collection.

The executor suggests that the provisions of our code of civil procedure with relation to survival of actions, G. S. 1949, 60-3201, may have no application in that G. S. 1949, 59-2006 as amended defines "its limitations as exactingly as its grant." We assume the grant referred to is that the cause of action is created by the statute—a conclusion which we have demonstrated is not correct. As we understand the executor's argument it is that the statute provides that payment shall be by "said patient, by the guardian of his estate, or by any person bound by law to support him" and that the state de-

partment of social welfare may recover from "such patient . . . from the estate of such person or from any person bound by law to support him" and that the failure to add after the twice repeated words "or from any person bound by law to support him" the additional words "or from his estate," can lead only to a conclusion that death of the parent ended his obligation of support. There are at least two answers. The first is that the statute was setting forth that the incompetent patient and his estate had primary liability, and spouses, parents and children had a secondary liability. The second is that no attempt was being made to charge the estate of a deceased spouse, parent or child for any liability for support rendered after death. There is nothing in the above section that even by implication says that a debt to the state department of social welfare by a spouse, parent or child abates without hope of revival upon the death of such spouse, parent or child. As having bearing on the question, and assuming only a statutory liability were involved, see G. S. 1949, 59-2239, which provides a statute of limitations on "any statutory liability of decedent," and which would certainly be a futility if it be true that every cause of action based on a statutory liability did not survive.

The petitioner directs attention to the case of *Treasurer & Receiver General v. Sheehan,* 228 Mass. 468, 193 N. E. 46, 96 A. L. R. 534, and the annotation following the last citation. In that case a trial was had and from all the facts the court was able to say that a cause of action survives when founded upon an implied or quasi contract, as well as when founded upon an express agreement, and that there was survival of the State Treasurer's cause of action to recover from the deceased parent's estate for support during her lifetime of her incompetent son who was confined in a state hospital. Insofar as the instant case is concerned we know only the bare facts stated in the petition for the allowance of demand as abstracted above, and from the executor's brief that the incompetents are adults. We are not advised as to when the incompetents were committed to the hospital nor their then ages, nor from whom either received support prior to commitment, whether either has property of his own, whether either has a spouse, whether their mother may have paid previous bills for their maintenance at the state hospital or elsewhere, or other pertinent information which should be before us for consideration, before discussing any theory of contract liability, even though we may concede that an action on contract survives the death of one of the parties to it.

We have no hesitancy in holding that the cause of action survived under the express provisions of G. S. 1949, 60-3201.

We conclude that the district court erred in sustaining the executor's objection that the petitioner's cause of action against Lucy Glass abated at her death and did not survive and that the probate court had no jurisdiction of the claim asserted. Its ruling is reversed and the cause is remanded to the district court with instructions to vacate its ruling, to deny the objection, and to certify the cause and its ruling to the probate court for further proceedings.