(11 P.3d 98)

No. 84,396

DEFFENBAUGH INDUSTRIES, INC., and HARTFORD CASUALTY INSURANCE CO., d/b/a SPECIALTY RISK SERVICES, *Appellants*, v. WILLIAM E. WILCOX, and DAN LYKINS, *Appellees*.

Opinion filed September 29, 2000.

*Hal E. Pierce*, and *Michael W. Wharton*, of Couch, Pierce, King & Hoffmeister, Chartered, of Overland Park, for appellants.

*Dan Lykins*, of Bryan, Lykins, Hejtmanek & Fincher, P.A., of Topeka, for appellees.

Before BRAZIL, C.J., GREEN, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

GREEN, J.: Deffenbaugh Industries, Inc. (Deffenbaugh) and Hartford Casualty Insurance Co. (Hartford) appeal from a declaratory judgment granted to Dan Lykins, a Topeka attorney, and his client William E. Wilcox, in an action to recover attorney fees under K.S.A. 44-504. On appeal, Deffenbaugh and Hartford argue that they are not required to pay a proportionate share of Lykins' attorney fees under K.S.A. 44-504 because Deffenbaugh and Hartford were reimbursed for workers compensation expenses under an indemnity contract and not under statutory subrogation. We agree and reverse.

On October 1, 1997, Wilcox was injured in a work-related accident during the course of his employment with Deffenbaugh. Wilcox was injured when a can of window cleaner manufactured or packaged by Sherwin-Williams exploded in his hand.

On October 10, 1997, Deffenbaugh entered into an indemnity agreement with Sherwin-Williams regarding Wilcox's accident and injury. In that agreement, Sherwin-Williams agreed to reimburse Deffenbaugh and Deffenbaugh's workers compensation insurer, Hartford, for any expenses Deffenbaugh might incur as a result of any workers compensation claim Wilcox might make against Deffenbaugh. Specifically, the indemnity agreement provided in part as follows:

"Sherwin-Williams . . . hereby agrees to indemnify Deffenbaugh Industries, Inc. for reasonable out-of-pocket expenses arising out of the work related injury of Mr. Wilcox, including but not limited to temporary disability payments, medical bills, handling charges and other administrative costs associated with handling the compensation claim. Additionally Sherwin-Williams . . . agrees to make indemnity payments directly to Hartford . . . when billed, providing sufficient back-up documentation is provided by Hartford."

On October 22, 1997, Wilcox entered into a contract for legal services with Lykins wherein Lykins agreed to represent Wilcox in his personal injury claim against Sherwin-Williams. The agreement for attorney fees was 33 1/3% of whatever might be recovered on the personal injury claim by settlement without filing a lawsuit. Wilcox was represented by another attorney in Lykins' law firm, Roger D. Fincher, in his workers compensation claim against Deffenbaugh.

On October 22, 1997, Lykins sent a letter to Hartford stating that he represented Wilcox's interests. The next day, Deffenbaugh informed Lykins that Sherwin-Williams agreed to reimburse Deffenbaugh for any workers compensation benefits paid as a result of Wilcox's accident.

On November 30, 1998, Wilcox settled his workers compensation claim against Deffenbaugh and Hartford for $27,902.75. Including the settlement amount of $27,902.75, Deffenbaugh and Hartford incurred $50,788.79 in expenses in connection with Wilcox's workers compensation claim. Lykins later negotiated a total settlement with Sherwin-Williams on Wilcox's personal injury claim. Lykins claims he negotiated a settlement for all of Wilcox's claims, including the workers compensation claim. The total settlement was for $275,000. From that amount, $50,788.79 was to be paid to Deffenbaugh and Hartford as reimbursement for their workers compensation expenses, with the remaining $224,211.21 going to Wilcox in satisfaction of his personal injury claim.

However, before Sherwin-Williams reimbursed Deffenbaugh and Hartford for the workers compensation expenses, Lykins notified Sherwin-Williams that under K.S.A. 44-504(b) he had an attorney fees lien on Deffenbaugh and Hartford's workers compensation subrogation claim. Specifically, Lykins claimed attorney fees in the amount of $16,929.60, which was one-third of the reimbursement amount. Instead of getting involved in the attorney fees dispute, Sherwin-Williams sent a check in the amount of $50,788.79 to Lykins. The check was made out to Wilcox, Lykins, Deffenbaugh, and Hartford. Lykins and Wilcox endorsed the check and sent it to Deffenbaugh and Hartford. Lykins enclosed a letter with the check which read:

"As you can see, Mr. Wilcox and I have endorsed the subrogation check and will allow your client to cash the check with the understanding that one-third of the check be deposited in an interest bearing trust account by your office in the amount of $16,929.60 which represents the attorney fee I am claiming regarding the recovery of the workmen's compensation subrogation claim. . . . I am also enclosing a letter from . . . Sherman [*sic*] Williams . . . in which [Sherwin-Williams] request[s] that the workmen's compensation check not be negotiated until the General Release is signed by all of the parties on the signature page of the Release."

Deffenbaugh and Hartford filed a declaratory judgment action against Wilcox and Lykins for a determination of whether Lykins was entitled to attorney fees relating to Sherwin-Williams' indemnification of Deffenbaugh's workers compensation expenses. Both parties moved for summary judgment.

At oral argument on the parties' cross motions for summary judgment, the trial court asked Lykins when he was informed of Deffenbaugh and Hartford's indemnity agreement with Sherwin-Williams. Lykins told the court that he did not learn of the indemnity agreement until "very late" in the process. After hearing arguments, the trial court granted Lykins and Wilcox's summary judgment motion. The trial court ruled that as a matter of law, Lykins was entitled to attorney fees in the amount of $16,929.60. The trial court rationalized:

"I am concerned that by sanctioning the indemnity agreement in this case that we would be encouraging tort defendants to make deals with employers. I do not believe that would be good for the system. . . . [T]he employer and the employee should be on the same side when there is a third-party tort defendant out there. They should be working together. . . .

"Secondly, Mr. Lykins didn't know whether or not there was a[n] indemnification agreement. That's not a part of the record, but at argument here . . . Mr. Lykins said it was late in the processing of the case before he found out. That is a tremendous admission of liability on the part of Sherwin-Williams . . . [and] had that admission of liability been disclosed by the employer to Mr. Lykins . . . maybe the whole situation changes. I mean, he would certainly be in a stronger bargaining position because he's got Sherwin-Williams basically saying I'm liable. . . . In this case, this type of agreement would eliminate the financial motivation or incentive for Deffenbaugh to investigate liability facts as to injured employees. If you have an indemnity agreement, that incentive is gone."

Instead of basing its decision on K.S.A. 44-504, the trial court used public policy to support its ruling. Moreover, the trial court was apparently persuaded by Lykins' statement that he was informed of the indemnity agreement late in the processing of the case.

After the trial court's ruling, however, Lykins sent a letter to the trial court which stated in pertinent part as follows:

"After I received [the transcript of the hearings on the cross motions for summary judgment], I checked my records and found a memo to the file indicating that on October 23rd, 1997 I spoke with . . . an attorney for Deffenbaugh, Inc. and the memo states the follow[ing], '3M [i.e., Sherwin-Williams] did not man-

ufacture the product that caused Mr. Wilcox injuries but it appears they are accepting full responsibility since they have told Deffenbaugh, Inc. that they will pay for all of Mr. Wilcox workmen's compensation payments . . . .'"

The letter, however, is contradictory because in a later paragraph Lykins stated: "I did not know about the Indemnity Agreement until [an attorney for Deffenbaugh and Hartford] sent it to me when he filed the Petition for Declaratory Relief in February of 1999." Nevertheless, Lykins did not originally provide the trial court with accurate information regarding his knowledge of the indemnity agreement.

On September 29, 1999, Deffenbaugh and Hartford moved to alter or amend the trial court's judgment based on Lykins' admission that he knew of the indemnity agreement early in the processing of the case. Deffenbaugh and Hartford argued that the trial court believed that the date by which Lykins was informed of the indemnity agreement was material to its decision for summary judgment. The trial court denied the motion to alter or amend judgment.

On appeal, Deffenbaugh and Hartford contend that Lykins is not entitled to recover attorney fees under K.S.A. 44-504 because Deffenbaugh and Hartford were not reimbursed for workers compensation benefits under statutory subrogation rights. The construction and interpretation of K.S.A. 44-504 is a question of law, subject to unlimited appellate review. *Lemery v. Buffalo Airways, Inc.*, 14 Kan. App. 2d 301, 304, 789 P.2d 1176, *rev. denied* 246 Kan. 767 (1990). Moreover, this court has held that the issue of whether the trial court had authority to impose attorney fees is a question of law over which this court has plenary review. *Walker v. State*, 26 Kan. App. 2d 410, 411, 988 P.2d 283, *rev. denied* 268 Kan. 896 (1999). In the present case, the challenge is not to the amount of attorney fees awarded, but whether the court had the power to award fees in these circumstances. Accordingly, our standard of review is de novo.

K.S.A. 44-504 provides, in pertinent part:

"(a) When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ

to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person.

"(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may participate in the action. . . .

"(c) . . . The court shall fix the attorney fees which shall be paid proportionately by the employer and employee in the amounts determined by the court.
. . . .

"(g) In any case under the workers compensation act in which the workers compensation fund or an insurer or a qualified group-funded workers compensation pool, as provided in K.S.A. 44-532 and amendments thereto, is subrogated to the rights of the employer under the workers compensation act, the court shall fix the attorney fees which shall be paid proportionately by the workers compensation fund, insurer or qualified group-funded workers compensation pool and the worker or such worker's dependents or personal representatives in the amounts determined by the court based upon the amounts to be received from any recovery pursuant to an action brought under this section."

Resolution of the attorney fees issue hinges on a determination of whether Deffenbaugh and Hartford were reimbursed for their workers compensation expenses as a subrogee under K.S.A. 44-504(b) or whether they were reimbursed under the terms of the indemnity agreement.

"Subrogation is a creature of equity invented to prevent a failure of justice and is broad enough to include every instance in which one party is required to pay a debt for which another is primarily answerable." *Western Surety Co. v. Loy*, 3 Kan. App. 2d 310, 312, 594 P.2d 257 (1979). More specifically, subrogation exists to prevent double recovery. For example, an injured employee cannot claim a right to both the workers compensation payments and the cause of action against a third party as this would violate the principle of indemnity by permitting double recovery. See generally Stempel, Law of Insurance Contract Disputes § 11.01 (2d ed. 1999). Instead, an employer receives reimbursement for the

amount of its expenditures as a claim against the proceeds of a third-party recovery, and the employee gets the excess. K.S.A. 44-504(b); 6 Larson, Workers' Compensation Law § 117.01[1] (2000). Several Kansas appellate cases have addressed this type of subrogation. See, *e.g.*, *Nordstrom v. City of Topeka*, 228 Kan. 336, 613 P.2d 1371 (1980); *Lemery*, 14 Kan. App. 2d 301.

Under Kansas law, one who asserts the right of subrogation must step into the shoes of, or be substituted for, one whose claim or debt he or she paid and can only enforce those rights the latter could enforce. *Corley v. Wichita Elec. Co., Inc.*, 163 F.R.D. 12, 13 (D. Kan. 1995). On the other hand, the right to subrogation may be waived. *Flott v. Wenger Mixer Manufacturing Co.*, 189 Kan. 80, Syl. ¶ 3, 367 P.2d 44 (1961).

Subrogation is distinguishable from a contract of indemnity, which is "where the promisor agrees to save a promisee harmless from some loss, irrespective of liability to a third party." Restatement of Security § 82, comment l (1941). An example of indemnity is "when C promises A that he will reimburse A in the event that A is compelled to pay B. Here C is called an indemnitor against loss." Camari & Perillo, The Law of Contracts § 17-6 (2d ed. 1977); see *Ronnau v. Caravan International Corporation*, 205 Kan. 154, 160, 468 P.2d 118 (1970).

As outlined in the above example, Deffenbaugh and Hartford's agreement with Sherwin-Williams constituted a contract for indemnity. Sherwin-Williams became an indemnitor against loss. Sherwin-Williams promised to reimburse Deffenbaugh and Hartford in the event those companies paid workers compensation benefits to Wilcox.

Although K.S.A. 44-504 grants an employer legal subrogation rights to certain proceeds recovered by its employee against a third-party tortfeasor, nothing in the statute prevents an employer from waiving that right. Deffenbaugh and Hartford waived their right to statutory subrogation by contracting with Sherwin-Williams for repayment of Wilcox's workers compensation benefits and by giving early notice of this agreement to Lykins.

It was reasonable for Deffenbaugh and Hartford to elect reimbursement under the indemnity agreement rather than statutory

subrogation. First, unlike the statutory right to subrogation, the indemnity agreement guaranteed Deffenbaugh and Hartford repayment of the workers compensation expenses, regardless of whether Wilcox was successful in a claim against Sherwin-Williams. Moreover, the indemnity agreement did not require Sherwin-Williams to wait for Wilcox's tort litigation to be settled before repayment of the workers compensation expenses was due. In addition, while the indemnity agreement worked to Deffenbaugh and Hartford's advantage, the agreement did not limit Wilcox's right to pursue a claim against Sherwin-Williams. As a result, we find that Deffenbaugh and Hartford were reimbursed for Wilcox's workers compensation expenses under the terms of the indemnity agreement.

Because Deffenbaugh and Hartford recovered their workers compensation expenses under the indemnity agreement, it was unnecessary for Deffenbaugh and Hartford to step into Wilcox's shoes during Wilcox's negotiations with Sherwin-Williams. Conversely, it was unnecessary for Wilcox to protect Deffenbaugh and Hartford's subrogation rights during negotiations with Sherwin-Williams. As such, it is unclear why Lykins negotiated a total settlement of $275,000 with Sherwin-Williams, considering part of that recovery went to Deffenbaugh and Hartford. We also do not understand why Sherwin-Williams placed Wilcox's and Lykins' names on the reimbursement check because the indemnity agreement required Sherwin-Williams to make the indemnity payments directly to Deffenbaugh and Hartford. Nevertheless, although Wilcox and Lykins may have ostensively protected Deffenbaugh and Hartford's subrogation rights, this was unnecessary because Deffenbaugh and Hartford waived their right to statutory subrogation by entering into the indemnity agreement and by giving early notice of this agreement to Lykins.

Kansas follows the American Rule that courts do not have authority to award attorney fees in civil cases except those authorized by statute or agreed to by the parties. *United States Fidelity & Guaranty Co. v. Maish*, 21 Kan. App. 2d 885, 905, 908 P.2d 1329 (1995). Likewise, a court does not have authority to impose attorney fees under its equitable powers in the absence of statutory

authorization. 21 Kan. App. 2d at 905-06; see *Golconda Screw, Inc. v. West Bottoms Ltd.*, 20 Kan. App. 2d 1002, 1009-10, 894 P.2d 260 (1995). Because Deffenbaugh and Hartford were not subrogated under K.S.A. 44-504, Lykins is not entitled to attorney fees on the reimbursement payment from Sherwin-Williams under that statute. As a result, the trial court lacked the statutory authority to award Lykins the attorney fees awarded in this case.

Reversed.