(201 P.3d 770)
No. 99,157

IN THE MATTER OF THE MARRIAGE OF SHERRI RISLEY DONEY, N/K/A GOODNER, *Appellee/Cross-appellant,* and CHARLES RISLEY, *Appellant/Cross-appellee.*

Opinion filed February 27, 2009.

*James M. Sheeley,* of Kansas City, for appellant/cross-appellee.

*Michael E. Whitsitt,* of Westwood, for appellee/cross-appellant.

Before MCANANY, P.J., BUSER and STANDRIDGE, JJ.

STANDRIDGE, J.: Charles Risley appeals from the district court's decision to extend his child support obligations to his disabled adult son past the age of majority. Sherri Goodner cross-appeals the district court's denial of her motion for attorney fees. For the reasons

set forth below, we reverse the decision regarding the child support obligation and affirm the decision with regard to the request for attorney fees.

### Facts

Charles Risley and Sherri Risley (n/k/a Sherri Goodner) were granted a divorce on February 4, 1994. They entered into a property settlement agreement that was filed on February 4, 1994. In the property settlement agreement, they agree that the

"obligation to support a child hereunder shall terminate when such child dies, marries, becomes self-supporting or reaches the age of 18 years, whichever shall first occur. However, should the child be attending high school upon attain [sic] age 18, support will continue until June 1 of the year in which the child graduates from high school. The parties recognize and agree that any provision for the care, custody and control of a minor child are subject to further order of the Court and may be altered by any Court of competent jurisdiction."

At the time of their divorce, the Risleys had two sons. The younger son was Darrin Risley. At around the age of 9 months, Darrin was diagnosed with cerebral palsy. Darrin's condition left him unable to speak and with only a limited ability to communicate through sign language. Darrin cannot be toilet trained and is in diapers 100% of the time. Someone must feed him, bathe him, and attend to his personal hygiene.

During the time period relevant to the issues presented on appeal, Darrin attended a high school at which he was considered to be in the 10th grade. His expected graduation date was May 2009. With that said, Darrin is considered to be a 23-month-old in terms of his chronological equivalency. Although the high school Darrin attended was not a conventional high school, it was part of the Raytown C-2 School District in Raytown, Missouri.

On July 24, 2006—approximately 30 days before Darrin was to reach the age of majority—the Wyandotte County District Court Trustee filed a pleading in the divorce case, seeking to extend child support benefits paid by Charles until Darrin's graduation from high school, which would occur well after Darrin turned 19 years old. Charles thereafter filed a pleading in which he opposed the pending motion to extend child support and requested full physical

custody over Darrin. Sherri then filed a pleading in response to Charles' request to change custody and submitted argument in support of the Trustee's pending motion to extend child support.

An evidentiary hearing on the Trustee's motion to extend child support was held on October 19, 2006. The district court took the matter under advisement. On October 26, 2006, Sherri filed a supplemental motion requesting the district court not only to extend the child support obligation past the age of majority, but to extend the obligation *indefinitely*. In support of this motion, Sherri referenced the common-law duty of parents to support their disabled child beyond the age of majority in the event the child is unable to support and maintain himself. Sherri also requested an award of attorney fees.

On October 27, 2006, the district court signed a Memorandum Decision finding that the January 19, 1994, settlement agreement between the parties in their divorce proceeding obligated Charles to make child support payments until June 1, 2009—the year during which Darrin is scheduled to graduate from high school. Notably, the district court entered this order without considering Sherri's supplemental motion requesting child support payments continue indefinitely. With regard to the amount of support that should be paid, the district court directed in the decision that the parties must submit to the court child support worksheets that included any income received for the care of Darrin and any income Darrin received himself.

On March 9, 2007, the district court filed a journal entry and order sustaining Sherri's supplemental motion to extend child support indefinitely. In the order, the district court held that both parents remain obligated to support Darrin despite him having reached the age of majority, and that such support should continue so long as Darrin remains disabled.

On June 25, 2007, a hearing was held to determine (1) the amount of the child support that should be paid by Charles; (2) Sherri's motion for attorney fees; and (3) Charles' recently filed motion for paternity testing. With regard to an appropriate amount of child support to order, the district court openly expressed concern about using the Kansas Child Support Guidelines given the

unique circumstances presented. To that end, the district court took the matter under advisement.

On July 10, 2007, the district court issued a memorandum decision that denied Charles' request for paternity testing, denied Sherri's request for attorney fees, and ordered Charles to pay child support in the amount of $900 per month until Charles' death or the death of Darrin, whichever should occur first.

## Analysis

On appeal, Charles asserts the district court was without statutory authority to order him to pay child support in the amount of $900 per month until Charles' death or the death of Darrin, whichever should occur first. Sherri also appeals from the court's order, asserting the district court abused its discretion in denying her request for an award of attorney fees.

### 1. Statutory Authority

Whether the district court exceeded its statutory authority is·a question of law over which this court has unlimited review. *Deffenbaugh Industries, Inc. v. Wilcox,* 28 Kan. App. 2d 19, 23, 11 P.3d 98 (2000), *rev. denied* 270 Kan. 897 (2001). To that end, Charles argues that the district court lacked statutory authority to order him to pay child support for his disabled son beyond the age of majority. More specifically, Charles argues the authority conferred by K.S.A. 2008 Supp. 60-1610(a)(1) is extinguished when a minor child reaches the age of majority.

In response, Sherri contends the statutory provision cited by Charles is inapplicable when the child at issue is disabled. Sherri argues Kansas common law is the applicable standard and that the common law appropriately conferred authority upon the district court in this matter. See *Keller v. Guernsey,* 227 Kan. 480, 488, 608 P.2d 896 (1980) (holding parent's duty of support may be judicially enforced by [1] proceedings under 60-1610[a]; [2] proceedings under K.S.A. 23-451 *et seq.*; or [3] an action to enforce the common-law duty of support). Sherri cites to three Kansas Supreme Court cases to support the proposition that common law imposes a duty upon every parent to support a disabled adult child,

so long as such child remains disabled: *In re Estate of Glass,* 175 Kan. 246, 262 P.2d 934 (1953); *Prosser v. Prosser,* 159 Kan. 651, 157 P.2d 544 (1945); *Sheneman v. Manring,* 152 Kan. 780, 107 P.2d 741 (1940).

Contrary to Sherri's assertion, we find Kansas common law no longer requires a parent to provide support for an adult incompetent child and thus the district court did not have authority under the common law to order the referenced support. See *Arche v. United States of America,* 247 Kan. 276, 289-91, 798 P.2d 477 (1990) (holding parents are not responsible for disabled child's expenses after child reaches age of majority). Although the issue in *Arche* was presented in the context of a wrongful birth action, the court's holding, which eliminates the common-law duty to support an adult incompetent child, is directly on point.

In its analysis, the *Arche* court noted that at the time *Glass, Prosser,* and *Sheneman* were decided, the Kansas Probate Code required parents to support incompetent children residing in a state hospital as patients. *Arche,* 247 Kan. at 288-89 (citing G.S. 1935, 59-2006 [1939 Supp.]). Finding such a statutory duty persuasive, the *Glass, Prosser,* and *Sheneman* courts similarly imposed upon parents a *common-law* duty to support an adult incompetent child, *regardless of where he or she is residing. Arche,* 247 Kan. at 286-90 (citing *Glass, Prosser,* and *Sheneman*).

When presented with the same issue almost 40 years later, the *Arche* court pointed out that the Kansas Legislature amended the probate code in 1967 to limit the duty of a parent to support of only incompetent *minor* children residing in state hospitals as patients. *Arche,* 247 Kan. at 289-90 (citing L. 1967, ch. 474, sec. 1). The *Arche* court then compared the duty imposed upon parents by the amended probate statute to the duty imposed by the unchanged common law and found a vital inconsistency in the state of the law:

"[U]nder the [amended] statute, parents of incompetent adult children are not bound by law to support such children if they are patients in state hospitals. On the other hand, if we apply our 'common-law' rule as expressed in *Sheneman, Prosser,* and *Glass,* parents are bound by law to support their incompetent adult children if the children are cared for at home, are patients in private institutions,

or are anywhere except in state institutions. Such a ruling would create an inconsistency in our law and an incongruous situation." *Arche*, 247 Kan. at 290.

Based on what had evolved to become an "inconsistent" and "incongruous" state of the law with regard to this issue, the Kansas Supreme Court in *Arche* modified its decisions in *Glass, Prosser,* and *Sheneman* to hold that Kansas common law no longer requires a parent to provide support for an adult incompetent child. Absent some indication that the Kansas Supreme Court is departing from its position, this court is bound by the holding set forth in *Arche*. But see *Laterra v. Treaster*, 17 Kan. App. 2d 714, 726, 844 P.2d 724 (1992) (without citing *Arche, Glass, Prosser,* or *Sheneman,* Court of Appeals panel summarily stated in the context of a wrongful death action that "Kansas law is clear that a parent has no legal duty to support a child beyond the age of majority, unless that child is physically or mentally unable to maintain and support himself or herself").

Based on the discussion above, we find the district court did not have authority to order Charles to provide support for his adult incompetent child based on a parent's common-law duty to provide support for his children. Nor do we find authority for the district court's order pursuant to K.S.A. 2008 Supp. 60-1610(a)(1). That statute states:

"[T]he court may order the child support and education expenses to be paid by either or both parents for any child less than 18 years of age, at which age the support shall terminate unless: (A) The parent or parents agree, by written agreement approved by the court, to pay support beyond the time the child reaches 18 years of age; (B) the child reaches 18 years of age before completing the child's high school education in which case the support shall not terminate automatically, unless otherwise ordered by the court, until June 30 of the school year during which the child became 18 years of age if the child is still attending high school; or (C) the child is still a bona fide high school student after June 30 of the school year during which the child became 18 years of age, in which case the court, on motion, may order support to continue through the school year during which the child becomes 19 years of age so long as the child is a bona fide high school student and the parents jointly participated or knowingly acquiesced in the decision which delayed the child's completion of high school."

Based on this language, it is clear that the district court did not have authority to order child support to continue for Darrin once

he reached the age of 18 unless he fell under one of the narrow statutory exceptions. Here, there is no evidence of a court-approved written agreement signed by Charles stating that he will pay support beyond the age of Darrin's majority; thus, the statute authorized the district court to decide only the issues set forth in subsection (a)(1)(B) and (C): whether Charles' support of Darrin should continue through the school year during which Darrin becomes 18 and/or 19 years of age. Notwithstanding this limited authority, the district court ordered Charles to pay child support of $900 per month until Charles' death or the death of Darrin, whichever should occur first. To that end, we find the district court exceeded its authority and hereby reverse that portion of the decision below that orders Charles to pay child support of $900 per month at any time after the end of the school year during which Darrin becomes 19 years of age.

## 2. Sherri's Motion for Attorney Fees

Sherri argues the district court abused its discretion in denying her an award of attorney fees. In support of her argument, Sherri maintains (a) she does not have the financial resources to fully pay her attorney and (b) Charles' unreasonable actions at the district court level caused her to incur unnecessary attorney fees.

The district court has the authority to award attorney fees for matters pertaining to child support pursuant to K.S.A. 60-1610(b)(4). Where the district court has authority to grant attorney fees, its decision is reviewed under the abuse of discretion standard. *Tyler v. Employers Mut. Cas. Co.*, 274 Kan. 227, 242, 49 P.3d 511 (2002). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the district court, then it cannot be said that the district court abused its discretion. *In re Marriage of Bradley*, 282 Kan. 1, 7; 137 P.3d 1030 (2006).

Here, we cannot say that the district court's decision to deny fees is arbitrary, fanciful, or unreasonable. Although Sherri argues she incurred unnecessary attorney fees due to Charles' actions in the proceedings below, we note that Sherri initiated the suit, Charles had a right to file responsive pleadings, and there is no

evidence that Sherri attempted to resolve the child support issue without court intervention. Moreover, Sherri's most recent domestic relations affidavit shows her with gross wages of $3,875 per month. We see no evidence that the district court's ruling on attorney fees was an abuse of discretion.

Affirmed in part and reversed in part.